James **L. MARSHALL**, Plaintiff in Error,

v.

The **STATE of Oklahoma**, Defendant in Error.

No. A–12470.

Criminal Court of Appeals of Oklahoma.
Sept. 25, 1957.

Wm. H. McClarin, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Plaintiff in error, James L. Marshall, hereinafter referred to as defendant, was charged in the district court of Tulsa County with the crime of indecent exposure; was tried before a jury, convicted and his punishment fixed by the jury at three years imprisonment in the State penitentiary. Appeal was duly perfected to this court.

A brief in support of the petition in error was due to be filed herein on or before May 16, 1957. Counsel did not appear for oral argument when the cause was set, but on May 31, on a plea of bad health, was granted twenty days additional time to file a brief. No brief has yet been filed, and the case is subject to a summary affirmance, in absence of fundamental error.

We have read the record carefully in search of fundamental error, and while we find none, we feel that justice requires a modification of the sentence imposed. The record impels this action.

The information set out that on April 8, 1956, the defendant "did unlawfully, wilfully, lewdly and feloniously expose his person and private parts in a public place, to-wit: in an automobile located at 2nd and Xanthus in the city of Tulsa, and in a place where there were present other persons to be offended and annoyed thereby, to-wit: Brenda Babb, age 14 years, and Billie Partridge, 13 years", etc.

The crime charged is covered by 21 O.S. 1951 § 1021 as amended Laws 1951, p. 60, § 1, providing: "Every person who wilfully and lewdly either: First: Exposes his person, or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or * * *".

After other provisions set out, it is provided that upon conviction punishment may be "by imposition of a fine not less than Ten Dollars ($10.00) nor more than One Thousand Dollars ($1,000.00) or by imprisonment for not less than thirty (30) days nor more than ten (10) years, or by both such fine and imprisonment."

Two young girls named in the information were the only State witnesses who professed to seeing defendant expose himself. Their evidence falls far short of that quality of evidence that would unequivocally indicate that either of them actually saw the private parts of the defendant.

Brenda Babb testified that she and a thirteen year old girl, Billie Partridge, on April 8, 1956, a little before 6:00 P.M. went to the Immanuel Baptist Church at Second and Xanthus Streets, Tulsa, to attend a training union class, but when they got there they did not see anyone they knew, so they came out to where the streets cornered, that Xanthus Street runs north and south, and Second Street runs east and west. They were on the southwest corner; they observed a brown Chevrolet automobile drive by; that while they were there this car circled the block three times; that the third time witness noticed that the driver was "playing with himself"; that his trousers were dark and the zipper was open. He was driving the car with his left hand and playing with himself with his right. She said that when she observed this she got his license number and asked Billie to get a pencil and paper from her purse and write this down. She said that "Well, when the car came back, Billie and I both noticed that it was the same car again, and I don't remember the exact words I said to Billie, but it was something, 'here he comes again,' or when we see a car twice or three times we usually make note of it." Witness was further asked: "Did you ever have occasion to observe that sort of performance by a driver and make a note, passing the same place before?" She answered, "Yes, sir", but said she did not get the license number unless they were doing something out of the ordinary. Witness admitted that the driver made no motion to attract their attention. She admitted that she and Billie stood and watched for the car to circle the block again after he had circled twice. She said that she knew exactly what the defendant was doing with his right hand as his car turned the corner. Said she: "Yes, as soon as he saw what we had seen him doing, he pulled away and that is when we got his license number."

Witness said that she and Billie then walked to Billie's home about two blocks away and reported the matter to Billie's mother, and she in turn called the father who called the police. They then went to the corner of Third and Xanthus to meet the police and soon defendant's car was seen coming from the north and the officers stopped defendant and made his arrest.

Billie Partridge testified substantially as Brenda Babb, except that she did not see the defendant smile at them, though she did say that when they saw defendant playing with himself they could not see from his shoulders up, and had to stoop

down in order to see defendant's face. She said that he made no motion at them, and was not staring at them.

The most damaging evidence was the statement of Officer Yerton, who made the arrest, and who claimed that he had a conversation with defendant after making the arrest. He advised defendant of his constitutional rights not to talk, he said, but nevertheless he proceeded to quiz defendant as if he expected him to answer. In the officer's words:

"I stated to the defendant that he had constitutional rights, that he could refuse to say anything, but that I would like to get just exactly what happened straight, and the defendant told me, he said, 'Officer', he said, 'My wife is pregnant and she has been pregnant for quite some time and a fellow kind of gets hard up and I was at the corner of Second and Xanthus and I was masturbating and the girls were there.'"

Officer May testified to assisting Officer Yerton in making the arrest. He did not testify to any purported statement made by the defendant.

The defendant testified. He said that he was twenty-four years old, lived in Tulsa, was employed by a named engineering company and had been for a year and a half; that he was married. He said that his father was a full-blood Creek Indian, and his mother was a white woman; that he had joined the United States Army in 1950 and was discharged in 1952, got married in 1952 and in 1953 re-enlisted in the army and served about twelve to eighteen months and served in Korea. He said that during this enlistment his second child was born, that he was stationed in Texas and his wife was with her parents at Anadarko and could not live on the $117 allotment that she was getting and that he went AWOL to see his family, and was discharged from the army on account of this. Defendant stated that he was a member of the Indian Missionary Baptist Church, Tulsa, and had known for most of witness' life the pastor, Rev. Hill. Witness said that he taught junior students in Sunday School and was the Sunday School Superintendent.

Defendant testified that on the afternoon in question he went with a younger brother and others to play golf; that by reason of a recent operation for appendicitis and because of an ache in his back that he wore a corset or girdle; that after the golf game he went by his brother's home and then hurried to the food store on East Third Street to get some groceries but found that he was short of money, having forgotten that he had purchased four golf balls and that he got in his car and made a left turn on Third Street, going west, made a right hand turn and the girdle he was wearing began to bother him, and after he turned right on Second at Utica he stopped, looked around, did not see anyone and parked about fifteen feet from the corner and proceeded to open his trousers and remove his girdle and throw it into the back seat, and that as he was parked there adjusting his clothes two girls walked by coming from behind. He said he saw them as they stepped off the curb and they turned around and looked at him. He said that he then drove to a friend's apartment to borrow some money to get groceries, but his friend had moved, that he then drove to the home of his friend's mother-in-law, and then returned to Foodtown and was driving down Xanthus when he noticed the traffic tied up and as he approached Second Street the police stopped him and arrested him. He then saw the two girls. He said that after the arrest:

"Officer Yerton, he spoke to me in a friendly manner when he arrested me, told me to get in his car and he reminded me also, after we were in his car that—of the constitution, that I didn't have to say anything, and as we started to town, he started asking me questions and he asked me if I came right out and tell me everything, that it would help me in court—not exactly, in court, but he said it would help me."

He said that he admitted to Officer Yerton that as he removed his girdle which had been chafing him, that he had a desire to masturbate, but that he remembered the fifth chapter of Matthew, thirteenth verse, and did not do so. He said that he was put in a lineup with some old grey-headed men and identified.

There was evidence that when defendant was arrested his pants were partially unzipped, but defendant testified that the zipper was defective. There was no evidence that defendant's pants or clothing or the seat or floor of his car showed any signs of the emission of semen to be expected if defendant did actually masturbate. The witnesses did not describe what they saw other than the conclusion that they saw defendant's privates. The car door was closed and the car was in the process of turning the corner. Their opportunity was apparently for but a few fleeting moments.

By reason of the testimony of Officer Yerton in connection with that of the two girls, there was sufficient evidence to submit the case to the jury, and by reason of our uniform holding that where there is any competent evidence to support the verdict of the jury, absent other errors, the same will not on appeal be disturbed, the judgment must be affirmed.

The effect of the verdict was to find as a fact that the defendant did expose himself as charged. He did admit, giving him the benefit of every doubt, that he removed his girdle in a public place. The girls said they saw his privates. This is not an aggravated case where a pervert seeks to attract attention or consciously show himself.

In view of our holdings in Daves v. State, 77 Okl.Cr. 343, 141 P.2d 603; Bunn v. State, 85 Okl.Cr. 367, 190 P.2d 464; and Davison v. State, Okl.Cr., 281 P.2d 196, it is the opinion of this court that the judgment should be modified to six months in the county jail of Tulsa County, and the judgment as so modified is affirmed.

BRETT, P. J., and NIX, J., concur.