**Homer Wilson COOK, Plaintiff In Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12651.**

Criminal Court of Appeals of Oklahoma.

Dec. 31, 1958.

Rehearing Denied March 4, 1959.

Elmore A. Page, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Homer Wilson Cook, plaintiff in error, was charged in the district court of Tulsa county with the crime of indecent exposure and found guilty by a jury, who left the punishment to be assessed by the court. In conformity with the verdict, the court fixed the penalty at three years in the State Penitentiary. Appeal has been duly perfected to this court.

For reversal, plaintiff in error, hereinafter referred to as defendant, in brief advances two propositions of error. No contention is made that the allegations of the information were not sufficient.

In his first proposition, the defendant challenges the sufficiency of the evidence to sustain the verdict of guilty and judgment of conviction.

To sustain the charge in this case, the State relied upon the testimony of one witness, Mrs. Irene Thelma Morgan. She testified that she lived at 3738 East 29th Street, in Tulsa, her home facing north. That her seven-room home contained a dinette on the back or south side of the house, and adjoining this, also on the south, was a large club room with fireplace and chimney in the center, and sliding glass doors on each side of the fireplace opening on a circular patio. Her back yard was entirely fenced, and she had two six-month old collie pups in the yard. On November 13, 1957, about 1 a. m. she was sewing in the dinette when the dogs started barking. She went to one of the sliding doors in the club room, switched on a light located on the patio just outside the door, and pulled back the draperies covering the glass door. She saw a man standing within a foot or two of the glass door, exposing himself. She pounded on the glass door and demanded: "You get the devil out of here", and kept pounding on the door. The man did not move, never once changed his facial expression or opened his mouth, and was committing an act of masturbation. He stood there two or three minutes and witness got a full view of his face. When he did not move she turned from the door, calling her husband who was asleep in the bedroom, and the man ran.

Mrs. Morgan testified that on December 3, 1957, she was taken to the police station, and out of five men in a police line-up immediately identified this defendant. She was very positive in her identification, and was thoroughly cross-examined on this point. There was a light in her house shining out on the patio, and a 100-watt light on a post on the patio.

On cross-examination this witness was asked if she observed the color of the man's eyes, and her answer was: "No, not particularly, but I knew that his eyes were staring at me so intensely that it was rather horrifying to watch his intense stare". She had never seen the defendant prior to the night the incident occurred.

Defendant filed a motion to strike the testimony of this witness, a demurrer to the evidence, and a motion for directed verdict, all of which were duly overruled. Whereupon he produced three witnesses. His defense was mistaken identity and an alibi.

Mrs. Jimmie Camp testified that she was manager of three apartments owned by Raymond L. Coghill; that she lived in the front and defendant and his wife occupied the rear half of a duplex. She said that a couple from Bartlesville came to her door the evening of November 12, 1957, looking

for an apartment; that Mr. Coghill had informed her that he had some vacancies and she attempted to telephone him at his home, and located him in the home of the defendant. She went to defendant's apartment about 9 p. m. with the couple from Bartlesville, and Mr. Coghill left with them, and returned about an hour later. Witness remained at the apartment of defendant until after midnight. She said that defendant came in from work about 9 o'clock and did not leave while she was there. She was very positive about the date, connecting it with Armistice Day and the birthday of her sister.

Mrs. R. L. Coghill testified that she and her husband visited the defendant and his wife on the evening of November 12, 1957, arriving about 7:30; that defendant came home from work about 9 p. m., and did not leave while she was there. She and her husband left a few minutes before 1 a. m.

Raymond L. Coghill testified that he and his wife arrived at the Cook apartment about 7:30 p. m., that Mr. Cook arrived home about 7:45; that Mrs. Camp came in about 9:30 with a couple from Bartlesville who were looking for an apartment and witness left with them, taking them to another apartment house he owned and which was managed by a Mrs. Driskell. That he was gone about an hour, returned to the Cook apartment and stayed there until after 12 o'clock. He was very positive about the date, the day after Armistice Day.

The State introduced two rebuttal witnesses. Ethel Driskell testified that she was manager of an apartment house owned by Mr. Coghill; that on December 27, 1957, he brought a couple to her, who were from Bartlesville, and she rented an apartment to them. A sheet from her ledger was introduced, showing that she collected one week's rent from Jim Goodman on December 27, 1957. She testified that was the date he arrived, that it was the only time Mr. Coghill ever brought a couple to her.

James Goodman testified that he went to a place in Tulsa looking for an apart-ment, and the woman took him "right around the corner" from her place and contacted Mr. Coghill, who took him and his wife to Mrs. Driskell, and they rented an apartment from her on December 27 or 28, in the evening.

This ended the evidence. The defendant did not testify.

We have carefully read all of the evidence in this case. The prosecuting witness told a straight forward story, and was very positive in her identification of the defendant. She testified that the man was at her door "close to around one in the morning" of November 13, 1957. There were some discrepencies in the testimony of the defense witnesses. Mrs. Camp testified that she remained at the apartment of the defendant "until after midnight" on the date in question; Mrs. R. L. Coghill said that she and her husband left a few minutes before 1 a. m.; and Mr. Coghill said that Mrs. Camp came in with the prospective tenants a little after 9 or 9:30, he left with them and was gone about an hour. He was asked how long he remained at defendant's home after he returned there, and his answer was: "I imagine a couple of hours, maybe after twelve o'clock. I know we got home about one o'clock, something like that." The two rebuttal witnesses testified that Mr. Coghill took the prospective tenants to Mrs. Driskell on December 24, 1957, as hereinbefore shown.

■■■ We think the evidence was sufficient to justify submission of the case to the jury. The weight of the evidence and credibility of the witnesses were clearly questions for the jury, and where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, the Criminal Court of Appeals will not substitute its judgment for that of a jury. Lincoln v. State, 86 Okl.Cr. 415, 193 P.2d 618; Powell v. State, 88 Okl.Cr. 404, 203 P.2d 892.

■■■ The identification of the defendant by the witness Irene Thelma Morgan was

a question of fact for the jury to determine, and while the identification was made twenty days after the occurrence, no doubt the jury took this, together with all the other facts and circumstances, into consideration.

■■ The question of alibi is not seriously urged in defendant's brief. He did not take the stand, and his wife did not testify. Mrs. Camp left the apartment of defendant "after midnight"; Mrs. Coghill left a few minutes before 1 o'clock, and Mr. Coghill stated they left "maybe after twelve o'clock" and that they got home before one. This court has repeatedly held that to entitle the defense of alibi to consideration, the evidence must be such as to show that at the very time of the commission of the crime charged the accused was at another place so far away or under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof. It is our opinion that the defendant failed to make this proof. The question was presented to the jury by proper instruction, and they were permitted to consider the evidence with reference thereto. Wehr v. State, 79 Okl.Cr. 426, 155 P.2d 731; Leeth v. State, 94 Okl.Cr. 61, 230 P.2d 942.

It is, therefore, our opinion that the court did not err in overruling defendant's motion to strike the evidence of Mrs. Morgan, his demurrer to the State's evidence, or his motion for a directed verdict.

Defendant's second proposition is that the court erred in failing to give defendant's requested instruction No. 3. This instruction had reference to the testimony of the prosecuting witness, and her identification of the defendant. Counsel for defendant states: "It is admitted by plaintiff in error that his requested instruction No. 3 might not have been in proper form or to have stated the issue fully or correctly, however, plaintiff in error argues that such requested instruction was sufficient to call the court's attention to such material issue, and that by failing to grant requested in-

struction No. 3, or give an instruction upon such material issue, that reversible error was committed. * * *"

■ We have carefully considered this requested instruction, and the instructions given by the court, and are of the opinion that the court in its general instructions correctly advised the jury as to the law applicable to the facts in the case, and that he did not commit reversible error in refusing to give the instruction complained of. Carr v. State, 91 Okl.Cr. 94, 216 P.2d 333; Brooks v. State, 59 Okl.Cr. 421, 60 P.2d 805.

Upon a careful review of the testimony and the instructions of the court, it is our conclusion that the defendant had a fair and impartial trial, and that his defense was well presented.

Finding no reversible error in the record, it follows that the judgment of the district court of Tulsa County must be, and the same is affirmed.

BRETT, P. J., and NIX, J., concur.

### On Rehearing

PER CURIAM.

Counsel for plaintiff in error on rehearing has argued earnestly that his client has convinced him of his innocence of the crime for which he was convicted, and he says that this court overlooked or ignored a case that counsel cited, which, although from another jurisdiction, is decisive of the main issue that he has presented for reversal.

It is argued that where the prosecuting witness was not previously acquainted with the defendant, and where no identifying scars or pronounced and peculiar physical characteristics were noted, that the identification by prosecutrix should be corroborated, and that the court should give to the jury a cautionary instruction covering such character of evidence. The case cited is Commonwealth v. Sharpe, 138 Pa.Super. 156, 10 A.2d 120, 121.

We did not go into that case simply for the reason that we considered the facts in that case at variance with the facts in this case in important and vital features. But counsel has argued so earnestly we have reviewed our opinion and the record in light of the argument on rehearing.

In Commonwealth v. Sharpe, supra, the defendant Sharpe was taken into custody on suspicion. The two robbers had worn masks. One witness identified Sharpe as having the general resemblance of one of the robbers. He would not say that defendant was one of the men other than as stated. A second witness refused to identify defendant as one of the robbers. A third witness thought the defendant had the same color of hair and general appearance of one of the masked robbers. The prosecuting witness would not identify defendant as one of the robbers, but it appeared that twice he viewed a line-up of prisoners, and the defendant was in the second line-up and witness said that something clicked and that he was the man he had seen, from the eyes, general build and hair. He said: "Something clicked at that time and I said 'that this is the man as far as I can tell.'" But on cross-examination this witness would not say that defendant was the man. There the court inter alia held:

"Where a witness states positively and without qualification that in his opinion defendant is the man who committed the crime, that is sufficient proof of identify.

\* \* \* \* \* \*

"No class of testimony is more uncertain and less to be relied on than that as to identify, and where great doubt is cast on it by witnesses themselves, it should be submitted to jury with great caution.

"Where sole issue was that of accused's identification as robber, and none of witnesses could definitely identify him, but merely testified that he resembled the robber in stature, color of hair and general appearance, failure of trial judge to caution jury as to proper approach to the testimony of identification was reversible error.

"In robbery prosecution, testimony of witnesses which went only to extent of saying that accused had general appearance of robber in stature, color of hair, and similar statements, witnesses refusing to commit themselves further, held insufficient to take case to jury."

We find no fault with Commonwealth v. Sharpe, supra, but it differs from the within case in that here the prosecuting witness was most positive in her identification and did not budge after rigid cross-examination. Then there is the circumstance that defendant's alibi came apart in the most convincing way—by record evidence.

If the prosecutrix had not testified positively, then the failure of the trial court to give a cautionary instruction might have required a reversal, for generally speaking, as stated by the Pennsylvania court, "No class of testimony is more uncertain and less to be relied upon than that as to identify, and, where great doubt is cast upon it by the witnesses themselves, there is a double reason for submitting it with great caution."

Although defendant in the within case has not complained of his sentence being excessive, in reviewing the record and briefs, we note that the man who was on the patio at the rear of the home of prosecutrix had not knocked on the sliding glass doors. In fact, the curtains were drawn. He made no motion to prosecutrix when she snapped on the light and drew the curtains, but continued to masturbate. He ran and got away when prosecutrix called her husband.

In view of the holdings in Daves v. State, 77 Okl.Cr. 343, 141 P.2d 603, Bunn v. State, 85 Okl.Cr. 367, 190 P.2d 464, and Marshall v. State, Okl.Cr., 316 P.2d 222, it is the opinion of this court that the judgment should be modified from three years to one year in the State Penitentiary; and the judgment as so modified is affirmed.