Jose Antonio RAMIREZ, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13883.

Court of Criminal Appeals of Oklahoma.

July 26, 1967.

Jay Dalton, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Penn Lerblanche, Ass't. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal from the Court of Common Pleas of Tulsa County, Oklahoma. Plaintiff in error, Jose Antonio Ramirez, hereafter referred to as defendant, as he appeared in the trial court, was convicted for the crime of exhibiting an obscene motion picture. Defendant was tried by a jury of eleven men and one woman.

On August 13, 1966 defendant was showing a commercial motion picture in his "Paris Arts Theatre", in Tulsa, Oklahoma. The film being shown is titled, "Night of Lust". The theatre is one commonly referred to as a theatre for "Adults Only". When the defendant was arrested the theatre employees were also arrested, and the film was confiscated. A film "trailer" for a subsequent showing of another film titled "Sexus" was also confiscated.

On October 19, 1966, the film was shown to the jury at the Orpheum Theatre in Tulsa, after which the trial was resumed the following day. The only testimony offered by the State was that of the arresting officer, Mr. Charlie Jones, of the Tulsa Police Department. The defendant testified in his own behalf. The only evidence introduced was the confiscated motion picture film.

Early in his testimony, Officer Jones stated, "I went inside and took a seat and viewed a portion of the movie 'Night of Lust' and the coming attractions, after 'The Night of Lust' was shown, entitled 'Sexus'."

He testified further that after viewing "a portion" of the film, he arrested the defendant, another man, and three boys who worked at the theatre; that he informed the defendant his theatre was closed; and he took possession of the film in question, along with some other film, which was subsequently returned to the defendant.

The charge was filed against the defendant; he was tried and convicted; and was sentenced to pay a fine of $500, and to serve ten days in the county jail. Following his conviction, he perfected his appeal to this Court.

Defendant discusses three assignments of error in his brief:

"1. The statute [1] under which the defendant was prosecuted is contrary to the Constitution of the State of Oklahoma and the Constitution of the United States of America.

"2. Error of the Court in overruling defendant's objections to Instruction No. 4.

"3. That the verdict is not sustained by sufficient evidence."

It will only be necessary to discuss the third assignment of error in disposing of this case. That being, that the evidence is not sufficient to sustain the verdict of the jury.

In the case at bar, the only testimony offered by the State was that of Officer Jones. His testimony does not show in any manner how the film complained of falls within the definition of "obscene". In substance, all that he testified to was: that he viewed a portion of the film, arrested the defendant, and the manner in which the arrest was accomplished; that he confiscated the film and closed the theatre. He then identified the film introduced into evidence as being the film viewed by

1. 21 Okl.St.Ann. § 1040.8.

the jury and the one on which the arrest was made.

The most pertinent case cited is that of United States v. Klaw, 350 F.2d 155, a case decided July 15, 1965 by the United States Court of Appeals, Second Circuit. Defendants in that case were convicted in the U. S. District Court for the Southern District of New York, of mailing obscene matter, and conspiring to do so. The conviction was reversed by the Circuit Court of Appeals, inasmuch as the jury had no more evidence than the material itself, and held that there was insufficient evidence for the jury to consider.

After discussing the apparent attitude of the United States Supreme Court, concerning matters of this nature, Circuit Judge Moore made the following statement, at page 160:

" * * * [T]he enlarged judicial function in this area requires that we consider the proof or lack thereof and the manner in which the case was placed before the jury, not just whether the material could possibly be brought within the range of the so-called 'obscenity' statute."

The situation in the case at bar is very similar to that found in the Klaw case, supra. In this case the only testimony offered by the State was that of Officer Jones; and the only evidence offered was that of the film. In his testimony, the Police Officer did not attempt to show that the motion picture appealed to his "prurient interests"; nor did he attempt to show that it appealed to the "prurient interests" of any of the spectators who were present in the theatre when he viewed it. In fact, the State did not introduce any testimony whatsoever, or make any effort to show that the film appealed to anyone's prurient interests. Instead, the film was shown to the jury, then, based upon the trial court's instructions, the jury was left to speculate. In this case, therefore, the main question is one of proof sufficient to sustain the conviction.

Some proof should have been offered to demonstrate prurient appeal, thereby supplying the fact-finders with knowledge of what appeals to prurient interest so that they have some basis for their conclusion, when applying the provisions of the Statute.[2] Juries should not be left to "pure speculation", or "guess work", in order to decide a verdict. This is especially true when a man's freedom is involved, even for ten days. In this case, there was no evidentiary basis whatsoever upon which the jury could recognize any appeal to the prurient interests of any class of people. They had no opportunity to judge the film shown to them other than on their own speculation, as to what they thought might consist of "prurient interests."

As Judge Moore stated in the Klaw case, supra:

" 'Due process of law' would be a meaningless cliche if the nonsensical trash that is the subject of this prosecution were allowed to be the basis of a conviction by judge or jury *without any proof demonstrating that it has the proscribed effect on any of our citizenry.*" (Emphasis added.)

We accept the rule set out in Cook v. State, Okl.Cr., 345 P.2d 902, cited in the Attorney General's brief, stating in part:

"The weight of the evidence and credibility of the witnesses were clearly questions for the jury, and where there is *competent evidence in the record from which the jury could reasonably conclude* that the defendant was guilty as charged, the Criminal Court of Appeals will not substitute its judgment for that of the jury." (Emphasis added.)

Likewise, when the evidence is not sufficient from which the jury could reasonably conclude that the defendant was

2. See: U. S. v. One Carton Positive Motion Picture Film, Entitled "491", U.S. Dist.Ct., S.D.N.Y., 247 F.Supp. 450, 463, et seq. for application of Klaw v. U. S., supra.

guilty as charged, this Court will have no hesitancy to reverse the judgment of the trial court. In this case, the only predicate for any conclusion about prurient appeal was the film itself, as if *res ipsa loquitur*. The jurors were therefore left to speculate. They were left to behold the film and, in effect, conclude that it was trash, disgusting, and undesirable. Because the jury was given no basis for understanding exactly how and why the film appeals to its audience; and because it was, no doubt, disgusting to them, they readily determined it to be "prurient appeal".

The burden is upon the State to prove its case, and in doing so, some evidence must be presented to the jury on each required element of the offense, to aid it in this determination of fact. No evidence was offered to show appeal to the prurient interests of anyone. No evidence was offered to prove the film is designed for, and primarily disseminated to, a clearly defined deviant sexual group to show how it satisfies the "average man test" of the Roth case, as defined by Mr. Justice Brennan in Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966)[3]. Nor was any evidence offered relative to "contemporary community standards", as defined in the statute, or as that evidence might relate to "social importance", or "social value", as defined by the United States Supreme Court.

Therefore, in answer to the question whether or not the State proved, that the film in question falls within the definition of obscenity, Title 21 O.S.Supp. 1966, § 1040.9, which provides:

> "'Obscene literature' shall mean any literature which, considered as a whole in the light of contemporary community standards, has as its predominant theme an appeal to prurient interests."

Our earlier statements, in relation to the question of burden of proof and the lack thereof, should make it clear that such required evidence was not presented at the trial.

As was recited in the Arizona Supreme Court case of City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966), a case presented at trial in much the same manner as the case at bar, and United States v. Klaw, supra, wherein the only evidence offered was the books and magazines, alleged to be obscene; and which like the Klaw case, supra, was reversed, wherein Judge Donofrio, quoting from an earlier case said:

> "The purpose of an appellate court is to review rulings on matters of law. When the issues of fact are properly presented to it, the Court may rule on whether as a matter of law there is any evidence to support the conclusions of the trier of fact."

In the instant case, the issues of fact were not properly presented to the jury. Therefore, we are compelled to hold that as a matter of law there is not sufficient evidence to support the verdict of the jury.

We would observe, as did the Arizona court, the statement made in dissent in

---

3. See: Mishkin v. State of New York, supra, wherein Mr. Justice Brennan discussed the "average man test" set forth in Roth v. United States, 354 U.S. 476, 489, 490, 77 S.Ct. 1304, at 1311, 1 L.Ed. 2d 1498 (1957), and stated: "Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the Roth test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. The reference to the 'average' or 'normal' person in Roth [citation supra] dos not foreclose this holding. In regard to the prurient-appeal requirement, the concept of the 'average' or 'normal' person was employed in Roth to serve the essentially negative purpose of expressing our rejection of that aspect of the Hicklin test, Regina v. Hicklin, [1868] L.R. 3 Q.B. 360, that made the impact on the most susceptible person determinative. We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of sexual interests of its intended and probable recipient group; * * *."

Jacobellis v. State of Ohio, 378 U.S. 184, 202, 84 S.Ct. 1676, 1685, 12 L.Ed.2d 793, 806, wherein Mr. Chief Justice Warren said:

"As a result, courts are often presented with procedurally bad cases and, in dealing with them, appear to be acquiescing in the dissemination of obscenity. But if the cases were well prepared and were conducted with the appropriate concern for constitutional safeguards, courts would not hesitate to enforce the laws against obscenity. Thus, enforcement agencies must realize there is no royal road to enforcement; hard and conscientious work is required."

For the reasons stated herein, this case must be, and is reversed.

NIX, P. J., concurs.

BUSSEY, J., not participating.