413 U.S. 115 (1973)
KAPLAN
v.
CALIFORNIA
No. 71-1422.
Supreme Court of the United States.
Argued October 19, 1972.
Decided June 21, 1973.
CERTIORARI TO THE APPELLATE DEPARTMENT, SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
*116 Stanley Fleishman argued the cause for petitioner. With him on the briefs were David M. Brown and Sam Rosenwein.
Ward Glen McConnell argued the cause for respondent. With him on the brief were Roger Arnebergh and David M. Schacter.
MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.
We granted certiorari to the Appellate Department of the Superior Court of California for the County of Los Angeles to review the petitioner's conviction for violation of California statutes regarding obscenity.
Petitioner was the proprietor of the Peek-A-Boo Bookstore, one of the approximately 250 "adult" bookstores in the city of Los Angeles, California.[1] On May 14, 1969, in response to citizen complaints, an undercover police officer entered the store and began to peruse several books and magazines. Petitioner advised the officer that the store "was not a library." The officer then asked petitioner if he had "any good sexy books." Petitioner replied that "all of our books are sexy" and exhibited a lewd photograph. At petitioner's recommendation, and after petitioner had read aloud a sample paragraph, the officer purchased the book Suite 69. On the basis of this sale, petitioner was convicted by a jury of violating California Penal Code § 311.2,[2] a misdemeanor.
The book, Suite 69, has a plain cover and contains no pictures. It is made up entirely of repetitive descriptions of physical, sexual conduct, "clinically" explicit *117 and offensive to the point of being nauseous; there is only the most tenuous "plot." Almost every conceivable variety of sexual contact, homosexual and heterosexual, is described. Whether one samples every 5th, 10th, or 20th page, beginning at any point or page at random, the content is unvarying.
At trial both sides presented testimony, by persons accepted to be "experts," as to the content and nature of the book. The book itself was received in evidence, and read, in its entirety, to the jury. Each juror inspected the book. But the State offered no "expert" evidence that the book was "utterly without socially redeeming value," or any evidence of "national standards."
*118 On appeal, the Appellate Department of the Superior Court of California for the County of Los Angeles affirmed petitioner's conviction. Relying on the dissenting opinions in Jacobellis v. Ohio, 378 U. S. 184, 199, 203 (1964), and MR. JUSTICE WHITE'S dissent in Memoirs v. Massachusetts, 383 U. S. 413, 462 (1966), it concluded that evidence of a "national" standard of obscenity was not required. It also decided that the State did not always have to present "expert" evidence that the book lacked "socially redeeming value," and that "[i]n light . . . of the circumstances surrounding the sale" and the nature of the book itself, there was sufficient evidence to sustain petitioner's conviction. Finally, the state court considered petitioner's argument that the book was not "obscene" as a matter of constitutional law. Pointing out that petitioner was arguing, in part, that all books were constitutionally protected in an absolute sense, it rejected that thesis. On "independent review," it concluded "Suite 69 appeals to a prurient interest in sex and is beyond the customary limits of candor within the State of California." It held that the book was not protected by the First Amendment. We agree.
This case squarely presents the issue of whether expression by words alone can be legally "obscene" in the sense of being unprotected by the First Amendment.[3] When *119 the Court declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression. See Roth v. United States, 354 U. S. 476, 481-485 (1957). Obscenity can, of course, manifest itself in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct. The Court has applied similarly conceived First Amendment standards to moving pictures, to photographs, and to words in books. See Freedman v. Maryland, 380 U. S. 51, 57 (1965); Jacobellis v. Ohio, supra, at 187-188; Times Film Corp. v. Chicago, 365 U. S. 43, 46 (1961); id., at 51 (Warren, C. J., dissenting); Kingsley Pictures Corp. v. Regents, 360 U. S. 684, 689-690 (1959); Superior Films, Inc. v. Dept. of Education, 346 U. S. 587, 589 (1954) (DOUGLAS, J., concurring); Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, 503 (1952).
Because of a profound commitment to protecting communication of ideas, any restraint on expression by way of the printed word or in speech stimulates a traditional and emotional response, unlike the response to obscene pictures of flagrant human conduct. A book seems to have a different and preferred place in our hierarchy of values, and so it should be. But this generalization, like so many, is qualified by the book's content. As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First Amendment *120 protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution. Miller v. California, ante, at 23-25; Roth v. United States, supra, at 483-485.
For good or ill, a book has a continuing life. It is passed hand to hand, and we can take note of the tendency of widely circulated books of this category to reach the impressionable young and have a continuing impact.[4] A State could reasonably regard the "hard core" conduct described by Suite 69 as capable of encouraging or causing antisocial behavior, especially in its impact on young people. States need not wait until behavioral experts or educators can provide empirical data before enacting controls of commerce in obscene materials unprotected by the First Amendment or by a constitutional right to privacy. We have noted the power of a legislative body to enact such regulatory laws on the basis of unprovable assumptions. See Paris Adult Theatre I v. Slaton, ante, at 60-63.
Prior to trial, petitioner moved to dismiss the complaint on the basis that sale of sexually oriented material to consenting adults is constitutionally protected. In connection with this motion only, the prosecution stipulated that it did not claim that petitioner either disseminated any material to minors or thrust it upon the general public. The trial court denied the motion. Today, this Court, in Paris Adult Theatre I v. Slaton, ante, at 68-69, reaffirms that commercial exposure and sale of obscene materials to anyone, including consenting adults, is subject to state regulation. See also United States v. Orito, post, at 141-144; United States v. 12 200-ft. Reels of Film, post, at 128; United States v. Thirty-seven Photographs, 402 U. S. 363, 376 (1971) (opinion of *121 WHITE, J.); United States v. Reidel, 402 U. S. 351, 355-356 (1971). The denial of petitioner's motion was, therefore, not error.
At trial the prosecution tendered the book itself into evidence and also tendered, as an expert witness, a police officer in the vice squad. The officer testified to extensive experience with pornographic materials and gave his opinion that Suite 69, taken as a whole, predominantly appealed to the prurient interest of the average person in the State of California, "applying contemporary standards," and that the book went "substantially beyond the customary limits of candor" in the State of California. The witness explained specifically how the book did so, that it was a purveyor of perverted sex for its own sake. No "expert" state testimony was offered that the book was obscene under "national standards," or that the book was "utterly without redeeming social importance," despite "expert" defense testimony to the contrary.
In Miller v. California, ante, p. 15, the Court today holds that the "`contemporary community standards of the State of California,'" as opposed to "national standards," are constitutionally adequate to establish whether a work is obscene. We also reject in Paris Adult Theatre I v. Slaton, ante, p. 49, any constitutional need for "expert" testimony on behalf of the prosecution, or for any other ancillary evidence of obscenity, once the allegedly obscene material itself is placed in evidence. Paris Adult Theatre I, ante, at 56. The defense should be free to introduce appropriate expert testimony, see Smith v. California, 361 U. S. 147, 164-165 (1959) (Frankfurter, J., concurring), but in "the cases in which this Court has decided obscenity questions since Roth, it has regarded the materials as sufficient in themselves for the determination of the question." Ginzburg v. United States, 383 U. S. 463, 465 (1966). See United States v. Groner, 479 *122 F. 2d 577, 579-586 (CA5 1973). On the record in this case, the prosecution's evidence was sufficient, as a matter of federal constitutional law, to support petitioner's conviction.[5]
Both Miller v. California, supra, and this case involve California obscenity statutes. The judgment of the Appellate Department of the Superior Court of California for the County of Los Angeles is vacated, and the case remanded to that court for further proceedings not inconsistent with this opinion, Miller v. California, supra, and Paris Adult Theatre I v. Slaton, supra. See United States v. 12 200-ft. Reels of Film, post, at 130 n. 7, decided today.
Vacated and remanded.
MR. JUSTICE DOUGLAS would vacate and remand for dismissal of the criminal complaint under which petitioner was found guilty because "obscenity" as defined by the California courts and by this Court is too vague to satisfy the requirements of due process. See Miller v. California, ante, p. 37 (DOUGLAS, J., dissenting).
MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART and MR. JUSTICE MARSHALL join, dissenting.
I would reverse the judgment of the Appellate Department of the Superior Court of California and remand the case for further proceedings not inconsistent with my dissenting opinion in Paris Adult Theatre I v. Slaton, ante, p. 73. See my dissent in Miller v. California, ante, p. 47.
NOTES
[1] The number of these stores was so estimated by both parties at oral argument. These stores purport to bar minors from the premises. In this case there is no evidence that petitioner sold materials to juveniles. Cf. Miller v. California, ante, at 18-20.
[2] The California Penal Code § 311.2, at the time of the commission of the alleged offense, read in relevant part:

"(a) Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor. . . ."
California Penal Code § 311, at the time of the commission of the alleged offense, provided as follows:
"As used in this chapter:
"(a) `Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.
"(b) `Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.
"(c) `Person' means any individual, partnership, firm, association, corporation, or other legal entity.
"(d) `Distribute' means to transfer possession of, whether with or without consideration.
"(e) `Knowingly' means having knowledge that the matter is obscene."
[3] This Court, since Roth v. United States, 354 U. S. 476 (1957), has only once held books to be obscene. That case was Mishkin v. New York, 383 U. S. 502 (1966), and the books involved were very similar in content to Suite 69. But most of the Mishkin books, if not all, were illustrated. See id., at 505, 514-515. Prior to Roth, this Court affirmed, by an equally divided Court, a conviction for sale of an unillustrated book. Doubleday & Co., Inc. v. New York, 335 U. S. 848 (1948). This Court has always rigorously scrutinized judgments involving books for possible violation of First Amendment rights, and has regularly reversed convictions on that basis. See Childs v. Oregon, 401 U. S. 1006 (1971); Walker v. Ohio, 398 U. S. 434 (1970); Keney v. New York, 388 U. S. 440 (1967); Friedman v. New York, 388 U. S. 441 (1967); Sheperd v. New York, 388 U. S. 444 (1967); Avansino v. New York, 388 U. S. 446 (1967); Corinth Publications, Inc. v. Wesberry, 388 U. S. 448 (1967); Books, Inc. v. United States, 388 U. S. 449 (1967); A Quantity of Books v. Kansas, 388 U. S. 452 (1967); Redrup v. New York, 386 U. S. 767 (1967); Memoirs v. Massachusetts, 383 U. S. 413 (1966); Tralins v. Gerstein, 378 U. S. 576 (1964); Grove Press, Inc. v. Gerstein, 378 U. S. 577 (1964); A Quantity of Books v. Kansas, 378 U. S. 205 (1964); Marcus v. Search Warrant, 367 U. S. 717 (1961); Smith v. California, 361 U. S. 147 (1959); Kingsley Books, Inc. v. Brown, 354 U. S. 436 (1957).
[4] See Paris Adult Theatre I v. Slaton, ante, at 58 n. 7; Report of the Commission on Obscenity and Pornography 401 (1970) (Hill-Link Minority Report).
[5] As the prosecution's introduction of the book itself into evidence was adequate, as a matter of federal constitutional law, to establish the book's obscenity, we need not consider petitioner's claim that evidence of pandering was wrongly considered on appeal to support the jury finding of obscenity. Petitioner's additional claims that his conviction was affirmed on the basis of a "theory" of "pandering" not considered at trial and that he was subjected to retroactive application of a state statute are meritless on the record.