**W. E. McCRARY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. A–17–032.

Court of Criminal Appeals of Oklahoma.

June 5, 1974.

As Corrected June 24, 1974.

**630**

Fleishman, McDaniel, Brown & Weston, Hollywood, Cal., Hensley & Neuwirth, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, W. E. McCrary, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, for the offense of Distributing, Publishing and Keeping For Sale Obscene and Indecent Writings, Books, Pictures and Photographs, Case No. CRF–71–354. His punishment was fixed at ten (10) years imprisonment and a fine of Five thousand dollars ($5,000); from said judgment and sentence, a timely appeal was perfected to this Court in McCrary v. State, Okl.Cr., 507 P.2d 924 (1973), wherein this Court affirmed his conviction.

On October 23, 1973, the Supreme Court of the United States vacated this Court's mandate and remanded the above cause to this Court for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theater I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200-ft Reels of Super 8mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973).

In compliance with the above mentioned order, this Court has conducted the following reexamination of the constitutional issues presented in appellant's appeal.

Briefly stated, the facts adduced at the trial revealed that the defendant managed a bookstore located in Lawton, Oklahoma. In late 1969 or early 1970, Mr. Berger, an operator of a used bookstore located in Oklahoma City, Oklahoma, entered into an agreement with defendant, wherein Berger would select certain books or magazines, transport the material to Oklahoma City, Oklahoma, and pay for the material or return it unsold within thirty (30) days.

Berger was arrested pursuant to a warrant issued by the District Court of Oklahoma County. Upon making the arrest,

and without objection by Berger, police officers searched Berger's store. In a closed closet they found and seized over one hundred and fifty (150) books and magazines. Thereafter, defendant was arrested in Lawton, Oklahoma, on a warrant issued by the District Court, Oklahoma County, Oklahoma.

Defendant contends that since a prior adversary hearing was not conducted before the seizure of the books and magazines, the magazines were unlawfully seized. Consequently, the trial court erred in overruling his motion to suppress the evidence. In support of his argument, he submits the cases of A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrant of Property, 367 U.S. 717, 6 L.Ed.2d 1127, 84 S.Ct. 1708 (1961).

In the case of Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), the Supreme Court, in footnote 7, emphasized *Marcus*, supra, and *A Quantity of Books,* supra, dealt specifically with published matter seized for the sole purpose of destruction as contraband and not for preservation as evidenced in a criminal prosecution. In *Heller*, supra, the Supreme Court concluded that not every seizure of published matter requires an adversary hearing.

■ As we view *Heller*, supra, it does not require an adversary hearing on the question of obscenity prior to the seizure of samples of published matter seized for the purpose of criminal prosecution. Consequently, the validity of the seizure of samples of published matter must be analyzed in light of traditional criminal procedures.

In the case of Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), the Supreme Court held that allegedly obscene material maintained for public distribution or exhibition cannot be seized contemporaneously with and as an incident to an arrest for public exhibition of same. The seizure must be incidental to issuance and execution of a constitutionally suffi-cient search warrant. Such a warrant can be constitutionally sufficient only if there is an opportunity afforded a magistrate to "focus searchingly on the question of obscenity", i. e., to make an ex parte judicial determination of probable obscenity.

■ First Amendment considerations provide the rationale for the requirement of a judicial determination of probable obscenity by a magistrate prior to the issuance of a search warrant. However, as stated in *Roaden,* supra, the seizure of said material by a police officer, without the authority of a constitutionally sufficient warrant, is unreasonable under Fourth Amendment standards. As previously noted in our earlier decision, the books in the instant case were found and seized at a place in which the defendant maintained no possessory interest. The occupant of the premises, Berger, permitted the search and thereby waived his Fourth Amendment rights. Fourth Amendment rights may not be vicariously asserted. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968). In Caskey v. State, Okl.Cr., 496 P.2d 408, this Court held that the right to question the validity of a search is personal to the occupant of the premises searched. Therefore, this Court's prior opinion in the instant case holding the defendant's challenge to the legality of the search without merit is compatible with the recent decisions of the United States Supreme Court.

The defendant in his original brief raised an issue concerning the expert witnesses presented by the State. After due consideration of the recent Supreme Court cases, we find our opinion of March 12, 1973, to be consistent with those decisions.

■ In Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973), the Supreme Court, citing Paris Adult Theater I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), held that there is no constitutional need for expert testimony on behalf of the prosecution or for any other ancillary evidence of obscenity once the allegedly obscene materials

themselves are placed in evidence. Consequently, although both the State and the prosecution may present expert testimony in an obscenity case, it is not a mandatory prerequisite to establishing a prima facie case under an .obscenity statute. We therefore expressly overrule our holding in Ramirez v. State, Okl.Cr., 430 P.2d 826, concerning the necessity of ancillary evidence.

In regard to defendant's assignments of error as originally argued, we note the arguments concerning improper venue, improper conduct of the trial court, the instructions on a lesser included offense under 21 O.S.1971, § 1040.8, and the propriety of prosecuting the defendant under 21 O.S.1971, § 1021 (3) instead of 21 O.S.1971, § 1040.8 do not involve constitutional issues considered by the Supreme Court in its recent decisions. They, therefore, will stand as decided in our opinion of March 12, 1973.

The defendant on remand next complains that the trial court improperly instructed the jury upon the necessity of "scienter", i. e., that the defendant have knowledge of the unlawful character of the material seized. In the instant case the trial court instructed the jury in the exact language of 21 O.S.1971, § 1021(3), and in so doing, instructed the jury that the prohibited acts must be *wilfully* committed. In order for the defendant to have wilfully distributed, published and kept for sale obscene writings, books, pictures and photographs, he must know of the material's obscene character. State v. Marston, 479 S.W.2d 481 (Mo.1972). Therefore it is our opinion that the term "wilful" in § 1021 (3) and the trial court's instruction define the necessary scienter or wrongful knowledge to avoid a fundamental error. No further instruction concerning scienter was requested by the defendant and he cannot now be heard to complain.

Defendant further argues on remand that 21 O.S.1971, § 1021(3) is unconstitutional on its face as the statutory language does not comply with the requirements set forth in Miller v. California, supra. In *Miller*, supra, a conviction for mailing unsolicited, obscene material under California penal code was vacated and the case remanded for further proceedings not inconsistent with the First Amendment standards established by the opinion. In enunciating the standards the Supreme Court stated as follows:

". . . State statutes designed to regulate obscene materials must be carefully limited. (citations omitted) As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, *as written or authoritatively construed.* A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value. (emphasis added)

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . . If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." (emphasis added)

It is in light of these new standards that the statute in question must be considered. In regard to counsel's argument that it is unconstitutional on its face and should not

be given saving construction, we note the case of United Artists Corporation v. Harris, 363 F.Supp. 857 (W.D.Okl.1973) wherein the Court sitting in banc, in applying their doctrine of abstention, determined that 21 O.S.1971, § 1040.8 and 21 O.S.1971, § 1040.51 in light of the language of *Miller*, supra, could be authoritatively construed to include the Miller requirements. Title 21 O.S. 1971, § 1040.8 is very similar to the Section in question in the case at bench.

In *12 200-ft Reels*, supra, the Supreme Court, by way of dicta in footnote 7, held as follows:

"We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where 'a serious doubt of constitutionality is raised . . .' and 'a construction of·the statute is fairly possible by which the question may be avoided.' United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (opinion of White, J.), quoting from Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) [19 U.S.C.S. § 1305(a)] and 18 U.S.C. § 1462 [18 U.S. C.S. § 1462], see United States v. Orito, supra, 413 U.S., at p. 146, [93 S.Ct. 2674, at p. 2676] 37 L.Ed.2d 516 (1973), we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in Miller v. California, supra, 413 U.S., at pp. 25, 26 [93 S. Ct. 2607 at pp. 2615–2616] 37 L.Ed.2d 431 (1973). See United States v. Thirty-Seven Photographs, supra, 402 U.S., at 369–374 [91 S.Ct. 1400, at 1404–1407], 28 L.Ed.2d 822 (1971) (opinion of White, J.). Of course, Congress could always

define other specific 'hard-core' conduct."

For reasons ·and in light of the above authority, it is this Court's opinion that a construction of § 1021(3) in terms of the Miller standards "is fairly possible" by which the question of constitutionality may be avoided.

■ Title 21 O.S.1971, § 1021(3) states in pertinent part as follows:

"Every person who wilfully either:

\* \* \* \* \* \*

"(3) writes, composes, stereotypes, prints, photographs, designs, copies, draws, engraves, paints, molds, cuts, or otherwise prepares, publishes, sells, distributes, keeps for sale, or exhibits any *obscene or indecent* writing, paper, book, picture, photograph, figure or form of any description; or

\* \* \* \* \* \*

"(4) . . ., is guilty of a felony . . ." (emphasis added)

It is a fundamental principle of constitutional law that whenever fairly possible an appellate court will construe a statute so as to avoid a constitutional issue. In the instant case, a serious doubt has been raised as to the vagueness of the phrase, "obscene or indecent" as used in § 1021(3). By way of saving construction we therefore, construe said phrase (obscene or indecent) as limiting regulated material to patently offensive representations or descriptions of that specific "hard-core" sexual conduct given as examples in *Miller,* supra. See *12 200-ft. Reels,* supra. Therefore, the phrase "obscene or indecent" as used to describe regulated materials in § 1021(3) is hereby construed to describe that material which constitutes:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or

(b) Patently offensive representations or descriptions of masturbation, excretory functions or lewd exhibition of the genitals.

**634**

Therefore, whenever an alleged violation of § 1021(3) is submitted to a jury, the jury must be fully instructed as to the above definition of "obscene or indecent" material. The jury must further be instructed as to the Miller standards for a finding of obscenity to-wit:

(a) Whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;

(b) Whether the work depicts or describes, in a patently offensive way, that sexual conduct specifically defined above; and

(c) Whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

The jury need not consider nor the State put on ancillary evidence of hypothetical and unascertainable "national standards." The jury need only apply contemporary state community standards.

The defendant next urges on remand that even though this Court construed § 1021(3) in conformance with *Miller*, supra, said construction should not be retroactively applied to this defendant. We cannot agree. The defendant has been charged under a statute which we believe provided fair notice to the defendant that his activities might bring prosecution.

Therefore, said cause is hereby remanded to the trial court for retrial in conformance with the terms and tenor of this opinion. Upon retrial the trial court should be guided by the standards and definitions set out above and the jury should be amply instructed as to said definitions and standards. See United States v. Thevis, 484 F. 2d 1149 (5th Cir. 9-12-73) ; United States v. Cote, 485 F.2d 574 (5th Cir. 10-11-73) ; United States v. Millican, 487 F.2d 331 (5th Cir. 10-18-73) ; United States v. Friedman, 488 F.2d 1141 (10th Cir. 12-11-73) and United States v. Thevis, 490 F.2d 76 (5th Cir. 2-19-74).

BRETT and BUSSEY, JJ., concur.