**Steven Rellon HESS and Venus Book Mart, Inc., Appellants,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–510.**

Court of Criminal Appeals of Oklahoma.

May 12, 1975.

Don E. Gasaway, George P. Phillips, Tulsa, for appellants.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellants, Steven Rellon Hess and Venus Book Mart, Inc., hereinafter referred to as defendants, were charged, tried before a jury and convicted in the District Court of Comanche County on three counts for violation of 21 O.S. § 1021(3), exhibiting and selling obscene and indecent books and magazines. Punishment was assessed at a fine of $5,000 on each count against the corporate defendant and a fine of $2,500 on each count against the defendant Hess. From a judgment and sentence in conformance with the verdict the defendants have perfected their timely appeal.

Briefly stated the facts are as follows: On or about the 11th day of July, 1973, Lawton Police Officer Terry Ball entered Venus Book Mart in Lawton and purchased two magazines and a paperback book from the defendant Hess, an employee of Venus Book Mart, Inc. Each item was wrapped in clear plastic at the time of the purchase. The officer did not remove the plastic or look at the contents of the magazines or book while in the store and no arrest was made at the time. The items were then turned óver to the Assistant District Attorney who subsequently filed a complaint and the arrest made. The material was admitted into evidence and submitted to the jury for their examination. The State then called two witnesses who testified that they resided in Comanche County and had read the material. It was their opinion that an average person, applying contemporary community standards, would find each item, taken as a whole, appeals to the prurient interest; that each item describes or depicts sexual conduct or contact in a patently offensive way; and that each item, taken as a whole, lacks serious literary, artistic, political or scientific value. Arbitrary exerpts from the material were then read to the jury.

The defendant then called three witnesses who testified that the material did not excite them sexually, that the material was of social value, that it didn't offend them personally and that in their opinion the material wouldn't appeal to the prurient interest of the average person in the community.

The defendant's first proposition in error contends that the provisions of 21 O.S. § 1021(3) are unconstitutional in the light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, decided June 21, 1973, and its companion cases. The pertinent portions of § 1021(3) are as follows:

"Every person who wilfully either:

\* \* \* \* \* \*

(3) writes, composes, . . . publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing,

paper, book, picture, photograph, figure or form of any description; or

(4) . . ., is guilty of a felony . . ."

This Court in the recent post-Miller decision of McCrary v. State, Okl.Cr., 533 P.2d 629, opinion dated June 5, 1974, held that the only material regulated by § 1021(3) is that material which constitutes:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or

(b) Patently offensive representations or descriptions of masturbation, excretory functions or lewd exhibition of the genitals."

In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, the Supreme Court in a pre-Miller decision was called upon to determine if a similar federal statute, 18 U.S.C. § 1461, which provides in pertinent parts as follows:

"Every obscene, lewd, lascivious, indecent, filthy or vile article . . .;

\* \* \* \* \* \*

is declared to be nonmailable matter . . ."

offended the free speech and free press guarantees and the safeguards against convictions based upon statutes "too vague" as to fail to give adequate notice of what is prohibited. The Supreme Court held in the negative. As stated in *Roth*:

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . .' (citations omitted) These words, applied according to the proper standard for judging

obscenity, already discussed, give adequate warning of the conduct proscribed and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law . . .. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . ..'" (citations omitted)

■ Therefore, the phrase "obscene or indecent" in § 1021(3) gave adequate warning of the conduct proscribed, met the requirements of due process and did not violate the guarantees of free speech and press prior to the *Miller* decision. See the recent case of Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, 1974. However, defendants argue that a retroactive application to these defendants of the Miller standards for the determination of obscenity prior to our post-Miller *McCrary* decision violates the constitutional provisions proscribing ex post facto laws, citing Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894, which held that since the crime for which the petitioners stood convicted was not enumerated in the statute at the time of their conduct, the convictions could not be sustained.

In *Hamling,* supra, the Supreme Court, considering the post-Miller application of the new obscenity standards to pre-Miller convictions under 18 U.S.C. § 1461, held:

". . . the enumeration of specific categories of material in Miller which might be found obscene did not purport to make criminal . . ., conduct which had not previously been thought criminal. That requirement instead added a 'clarifying gloss' to the prior construction and therefore made the meaning of the federal statute involved here 'most definite' in its application to federal obscenity prosecutions. (citation

omitted) Judged by both the judicial construction of § 1461 prior to Miller, and by the construction of that section which we adopt today in the light of Miller, petitioners' claims of vagueness and lack of fair notice as to the proscription of the material which they were distributing must fail."

thereby disposing of the argument against retroactive application.

In McCrary v. State, Okl.Cr., 507 P.2d 924, dated March 27, 1973, this Court in a pre-Miller decision held that § 1021(3) met the constitutional test for definiteness and gave sufficient notice to meet the requirements of due process. In our post-Miller *McCrary* decision, supra, by authoritative construction we applied the Miller standards to § 1021(3), and again found it to be constitutional.

Therefore, for the reasons set out in *Roth* and *Hamling* it is our opinion that the provisions of § 1021(3) are constitutionally sound as to these defendants when properly applied according to the standards for judging obscenity set out in *Miller*; and that in the instant case a correct application of the Miller standards prior to our authoritative construction in the post-Miller *McCrary* decision would not amount to a violation of the ex post facto law proscription.

■ The defendant further argues that this Court's authoritative construction of the phrase "obscene or indecent" was an unconstitutional usurpation of the legislative function. Of course, we cannot agree. As set out above, our pre-Miller *McCrary* decision held § 1021(3) to be constitutional and our authoritative construction in the second *McCrary* case added a "clarifying gloss" to the prior construction and therefore made the meaning of the statute more definite in its application to obscenity pros-

ecutions under same. See *Roth,* supra, and *Hamling,* supra.

■ Although the defendants' brief fails to raise the issue directly, an examination of the instructions presented by the trial court to the jury reflects that the trial court failed properly to instruct the jury concerning the standards and definitions set out in our post-Miller *McCrary* decision. *McCrary* requires that the jury be "amply instructed" as to said definitions and standards. It is therefore our opinion that the judgment and sentence appealed from should be reversed and remanded for new trial under proper instructions. The jury must be instructed that regulated material is limited to patently offensive representations or descriptions of that specific "hard-core" sexual conduct which constitutes:

a. Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or

b. Patently offensive representations or descriptions of masturbation, excretory functions or lewd exhibition of the genitals.

The jury must further be instructed as to the Miller standards for a finding of obscenity, to-wit:

a. Whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;

b. Whether the work depicts or describes, in a patently offensive way, that sexual conduct specifically defined above; and

c. Whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

BRETT, P. J., and BUSSEY, J., concur.