Floyd Dale COMBS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–702.

Court of Criminal Appeals of Oklahoma.

May 12, 1975.

Rehearing Denied June 2, 1975.

Don E. Gasaway, George P. Phillips, Tulsa, for appellant.

Larry Derryberry, Atty. Gen. Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant, Floyd Dale Combs, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Tulsa County for violation of 21 O.S. § 1040.51, sale of a magazine which shows pictures or photographs of acts of sexual intercourse. The jury left punishment to the trial court and it was assessed at a fine of $10,000. From the judgment and sentence of the trial court defendant has perfected his timely appeal.

The facts adduced at trial are as follows: On the 4th of September, 1973, Tulsa County Assistant District Attorney James Wooley entered the Sheridan Book Mart in Tulsa, browsed for a while and then purchased issue number 232 of Screw Magazine in newspaper form from the defendant. The newspaper was stapled shut and Wooley did not look inside. The magazine was introduced into evidence and submitted to the jury for examination. The magazine contains pictures of sexual intercourse on numerous pages.

On cross-examination the witness testified that the magazine did not excite him sexually. However, it appealed to his prurient interest because the pictures raised "thoughts that they are lewd pictures", but did not cause him to want to have any anti-social behavior. The State then rested.

The defense called Mack Finlayson, a University of Tulsa law student, who testified that he had talked to nine different people in the community and they did not seem to be "particularly offended by the newspaper and wouldn't mind other people having it, but they wouldn't buy it." He then proceeded through the magazines dis-

cussing various articles and pictures found therein, including pictures of actual intercourse and oral sex.

The defense then called Diane Quinn who testified that she resided in Tulsa, was a friend of the defendant's and other persons involved in the adult book trade and that she had talked to numerous people in the community who believed they should be able to read adult, sexually oriented books if they so desired.

The defense then called Robert Williams, an employee of B. Dalton Bookseller in Tulsa, who identified defendant's Exhibit No. 1, the book *"The Joy of Sex"*, and testified that the store has sold approximately 1,600 copies in 1974. The witness further described other sexually oriented books sold through his store and stated that approximately 20% of the 20,000 different titles in their store concern themselves with explicit sexual matters.

The defendant's first proposition in error urges that 21 O.S. § 1040.51 under which the information was filed, trial conducted and the judgment and conviction rendered, was, at the time of the filing of the information unconstitutional in light of the rulings of the United States Supreme Court of June 21, 1973, in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419, and its companion cases. The pertinent portions of § 1040.51 are as follows:

"Any person who knowingly buys, sells, barters, traffics in, or causes to be delivered or transported in Oklahoma, any picture, moving picture, series of pictures, drawing, diagram or photograph of any person or animal or caricature thereof in an act or acts of sexual intercourse or unnatural copulation shall be deemed guilty of a felony, and shall be punished by a fine of not to exceed Twenty-five Thousand Dollars ($25,000.-00), or by imprisonment for not to exceed fifteen (15) years, or by both such fine and imprisonment. . . . "

In our recent case of State v. Combs, Okl.Cr., —— P.2d —— A–18,010, this Court held that § 1040.51 as authoritatively construed in said case met the constitutional requirements of Miller and its companion cases. This Court further held that "acts of sexual intercourse or unnatural copulation" were acts properly proscribed by State obscenity statutes under Miller if depicted or described in a patently offensive way.

■ The defendant in his brief complains that the retroactive application of the Miller standards to the defendant in this case violates the constitutional ex post facto law proscription, citing Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894. However, the Supreme Court has recently held in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, that a retroactive application of the Miller standards to obscenity statutes did not purport to make criminal that conduct which had not previously been thought criminal, as was true in *Bouie*, supra. The Miller requirements instead add a "clarifying gloss" which makes the meaning of the statute "more definite" in its application to obscenity prosecutions. Therefore, claims of vagueness and lack of fair notice must fail. See also, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and Hess et al. v. State, Okl.Cr., F–74–510, 536 P.2d 362, recently decided by this Court.

■ The defendant further contends that this Court's authoritative construction of § 1040.51 in *Combs*, supra, was an unconstitutional usurpation of the legislative function. Of course, we cannot agree. The application of the Miller standards to said statute merely adds a "clarifying gloss" which makes the statute more definite.

■■ It is the further opinion of this Court that § 1040.51 has always met the requirements of notice and due process in sufficiently defining that material which was proscribed by the statute. As stated in *Roth*, supra, all that is required is that the statutory language convey sufficiently definite warning as to the proscribed con-

duct when measured by common understanding and practices. Therefore, for all the reasons set out above, it is our opinion that § 1040.51 as authoritatively construed is constitutionally sound and that no substantial right of this defendant is violated by the application of the Miller standards for judging obscenity in the instant case and prior to our decision in *Combs,* supra. See *Hamling,* supra.

The defendant's next proposition urges that the trial court committed reversible error in failing to suppress introduction of the material because no adversary proceeding to make a preliminary determination of and focus searchingly on the issues of obscenity as required by Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745, was held prior to the issuance of a warrant for the arrest of the defendant. We disagree. In *Combs,* supra, and in Cherokee News & Arcade, Inc. v. State, Okl.Cr., 533 P.2d 624, this Court specifically held that a prior adversary hearing is not required when allegedly obscene material is obtained by purchase and no seizure is involved.

The defendant next contends that the burden of proof was improperly placed on the defendant to prove his innocence rather than upon the State to prove his guilt. In support of his contention defendant argues that the only evidence of obscenity submitted by the State was the magazine itself and cites Ramirez v. State, Okl.Cr., 430 P.2d 826, which held that the mere introduction of allegedly obscene material into evidence is not sufficient to sustain a conviction. However, in McCrary v. State, Okl.Cr., 533 P.2d 629, this Court expressly overruled *Ramirez*; citing Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, and Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492. It is not a mandatory prerequisite to establish a prima facie case that the State present witnesses to establish the existence of the Miller standards. The introduction of the material and submission of same to the jury is sufficient.

Defendant further argues that Instruction No. 6 placed the burden of proving non-obscenity on the defendant. Instruction No. 6 is as follows:

"You are further instructed that the laws of the State of Oklahoma do not prohibit the sale of such material meeting the following standards:

1. Pursuant to medical prescription or for use in any recognized school of medicine or veterinary science for education purpose.

2. If the average person, applying contemporary community standards, would not find that the material, taken as a whole, appeals to one's prurient interest.

A. In applying contemporary community standards the material's impact on an average person must be determined, not the impact on a particularly susceptible or sensitive person, or, indeed, a totally insensitive one.

B. Prurient is defined by Funk & Wagnalls dictionary as:

1. Impure in thought and desire; lewd. 2. Having lustful cravings or desires. 3. Longing, desirous.

3. If the depiction, otherwise prohibited by the State Law, of sexual conduct, is not so depicted in a patently offensive way.

4. If the material, taken as a whole, is of literary, political, artistic or scientific value.

If, after considering all of the evidence, whether introduced by the State or by the defendant, you find that the sale of State's Exhibit No. 1 is not prohibited by reason of falling within one of the above categories, or if you have a reasonable doubt in this regard, it is your duty to resolve this case in favor of the defendant and acquit him."

We find that Instruction No. 6, as submitted, sufficiently and adequately instructed the jury as to the Miller standards. Therefore, defendant's contentions are without merit.

The defendant's next proposition urges that the defendant was denied a fair trial because of the repeated comments by the prosecutor which were designed to inflame the prejudice and passions of the jury and to embarrass same. We agree. The record reflects that the prosecutor made the following comment, to-wit:

"This magazine is nothing—it's an underground newspaper that holds our whole system in contempt and that's what it's for, for these flesh peddlers to try to influence people in their point of view and attacking our system of government and attacking our judicial system and attacking our law enforcement. They don't like the Supreme Court rules against them and it's hurting them. They complain that the Mafia is getting involved. You have got to consider all these things. *Where does this money go? Who does he work for?*" (emphasis added)

alluding to a possible connection between the defendant and organized crime. Such a comment is not supported by the evidence and is made solely to inflame the prejudice and passion of the jury.

The prosecutor on closing argument further comments as follows:

" . . . We don't know what he was thinking. We weren't there. We got to rely on those circumstances. Ladies and gentlemen, it's all there beyond a reasonable doubt that Mr. Combs knew that SCREW Magazine, this addition, dealing in sex, the whole thing is devoted to the death of smut, the last chance for real stuff. It doesn't take a minute scrutiny of the magazine to figure that out. When you pick it up it just jumps right out at you. It speaks for itself as to what it is. He sold it and the evidence tells you he knew what he was selling. *To deny that is to make the perfect defense for any defendant dealing in drugs, or anything else.*" (emphasis added)

"MR. PHILLIPS: Your Honor, we object to that—this reference to drugs.

THE COURT: Overruled.

MR. ROBERTSON: *A man selling heroin opens up a shop and advertises heroin.* (emphasis added)

MR. PHILLIPS: Your Honor, we object to this.

THE COURT: Overruled.

MR. ROBERTSON: Buy some heroin and he is selling it and he says, well, I don't know what I was selling . . . "

The comment concerning the sale of heroin is in no way supported by the evidence and it is again made solely to prejudice and inflame the jury.

However, it is our opinion that there is no reasonable doubt as to the defendant's guilt and any erroneous comment tended only to enhance punishment. Therefore, for the reasons stated above, the judgment and sentence appealed from is modified to a fine of $5,000.

BRETT, P. J., and BUSSEY, J., concur.