1. Plaintiff Paul Anderson withdrew from the present action as demonstrated by the

**ORDERS** that Defendants' motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Paul ANDERSON,[1] Robert Kiesinger, and Ronald Russell, Plaintiffs,

v.

MEXICO ACADEMY AND CENTRAL SCHOOL, The School Board of the Mexico Academy and Central School, in their respective official capacities, Robert DiFlorio, the School Superintendent of the Mexico Academy and Central School, in his official capacity, Defendants.

No. 5:00–CV–1356.

United States District Court, N.D. New York.

Feb. 15, 2002.

Amended Complaint filed on October 2, 2000.

Office of Thomas Marcelle, Slingerlands, New York City (Thomas Marcelle, of counsel), for plaintiffs.

Offices of Frank Miller, East Syracuse, NY (Frank Miller, of counsel), for defendants.

### MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

## I. INTRODUCTION

Plaintiffs Robert Kiesinger and Ronald Russell filed a lawsuit in the above captioned matter bringing five causes of action against defendants Mexico Academy and Central School, School Board of the Mexico Academy and Central School, and Robert DiFlorio, Superintendent of Mexico Academy and Central School (collectively "defendants" or "Mexico Academy"), pursuant to 42 U.S.C. §§ 1983 and 1988, and Art. 1, § 3 of the New York Constitution. Each cause of action stems from defendants' alleged exclusion of plaintiffs' bricks from the brick walkway in front of the Mexico Academy high school on the basis that the inscriptions on their bricks violated the Establishment Clause because they contained Christian messages and/or referred to "Jesus." In their first cause of action plaintiffs aver defendants violated their First Amendment right to Freedom of Speech. Second, plaintiffs contend defendants violated the Establishment Clause of the First Amendment by exhibiting "hostility" toward religion. Third, plaintiffs assert defendants' actions violated their First Amendment right of Free Exercise of religion. Fourth, plaintiffs assert defendants have violated their rights under Art. 1, § 3 of the New York Constitution. Finally, plaintiffs seek attorneys' fees. Presently before the Court is plaintiffs' motion for entry of a preliminary injunction against Mexico Academy in accordance with Fed.R.Civ.P. 65 directing Mexico Academy to place plaintiffs' bricks back in the walkway in front of the Mexico Academy High School, and for attorneys' fees and costs incurred in connection with this motion.

For the reasons stated in the following text, the Court holds that plaintiffs have not submitted evidence demonstrating a clear or substantial likelihood of success on the merits, and as such, they are not entitled to injunctive relief at this stage of the litigation.

## II. BACKGROUND

### A. Facts

According to the parties' submissions: During the 1996–1997 school year, the class of 1999 and Superintendent Havens

and the Mexico Academy school board commenced a plan to sell bricks to Mexico Academy community members in an effort to raise money for the class of 1999's senior class trip. *See* Aff. J. Russell. The bricks were sold for $25 and then later $30 a piece. *See* Aff. Havens. The bricks could be inscribed with up to three lines of text. *See* Def's Exh. A. No obscene or vulgar messages were permitted. *See* Aff. J. Russell. After the bricks were inscribed they were to be placed in a walkway to be constructed in front of the Mexico Academy high school. *See* Aff. Huff. At the time of purchase, individuals were given the opportunity to select where in the walkway they wished their bricks to be placed. *See* Def's Exh.

At least one of the plaintiffs in this action purchased bricks that contained inscriptions referring to "Jesus." *See* Aff. R. Russell. A brick inscribed "God Bless You/Father Wirkes/St. Mary's Church" was also purchased, though not by a party to this action. *See id.* After the bricks were placed in the walkway, Mexico Academy began receiving complaints from community members who were concerned about bricks which made "specific references to a Christian God." *See* Aff. Havens. Additionally, Mexico Academy received inquiries from the office of United States Senator Charles Schumer about the bricks referring to "Jesus." *Id.* In an attempt to quell the complaints, Mexico Academy placed a disclaimer in the walkway that read:

> The messages on this walk are personal expressions and contributions of the individuals of Mexico Academy and Central School community.

Aff. R. Russell. The disclaimer, however, did not lessen the complaints. *See* Aff. Havens. Thereafter, defendants' obtained a legal opinion with regard to the bricks at issue, and were advised that while the law was unsettled, it appeared that bricks which made reference to a particular God, suggesting the exclusion of others, offended New York Education Law § 414 and the United States Constitution. *See id.* Consequently, in February 2000, the Mexico Academy school board voted to remove the bricks which made specific reference to a "Christian God." Aff. Havens. Believing "God" to be "a universal term," Mexico Academy did not remove the brick inscribed "God Bless You/Father Wirkes/St. Mary's Church." *Id.* The Mexico Academy school board and Superintendent Havens determined "not to permit any religious or political expressions" on the bricks. *Id.* Thereafter, an individual seeking to purchase a brick, with the inscription "Keep Abortion Legal," was turned away. *Id.*

In September 2000, plaintiffs Robert Kiesinger and Ronald Russell filed the instant action seeking declaratory and injunctive relief. Presently before the Court is plaintiffs' motion for a preliminary injunction directing defendants to place their bricks in the Mexico Academy walkway.

## B. Evidentiary Submissions

### 1. *Plaintiffs*

In support of their motion, plaintiffs have submitted: affidavits from plaintiff Ronald Russell, and former Mexico Academy students: Crystal Huff, Tiffany Henderson and Joshua Russell; two exhibits; and a newspaper article describing the present controversy.

### a. *Ronald Russell*

In his affidavit, plaintiff Ronald Russell avers the following: He is a member of the Mexico community and resides within the Mexico school district. Mexico Academy students offered him the opportunity to purchase bricks that would be placed in the front walkway of Mexico Academy and inscribed with the message of his choice. Mr. Russell bought five bricks which were

inscribed with Christian messages, including, "Jesus Saves," "Jesus is Lord," and "You must be born again," and placed in the walkway. In a letter dated March 8, 2000, Superintendent Havens wrote Mr. Russell explaining that his bricks had been removed from the walkway:

> I am writing you regarding the bricks you purchased for the front of the high school. The bricks are inscribed "Jesus saves", "Ye must be born again Jesus Christ", "Jesus Christ the only way!", "Jesus loves you", "Jesus Christ is lord", "Jesus saves", and "Ye must be born again". As you might be aware there has been a fairly vocal complaint about bricks which contain the word "Jesus". As a result of that continuing complaint and a resulting inquiry from Senator Schumer's office we asked our attorneys about our legal right to keep the bricks as part of our sidewalk.
>
> We have been informed that bricks which promote a particular religion cannot legally be part of the sidewalk. Bricks which speak about God are acceptable since they do not refer to a particular religion. Bricks such as yours, which include the word Jesus, are prohibited in publicly funded schools since they promote a particular religion (Christianity).
>
> I regretfully inform you that we have therefore reluctantly removed your bricks. I apologize for any distress this causes you. I hope you understand that as school officials we swear an oath to obey the Constitution and the current laws of the land. Our counsel tells us that the Supreme Court's current interpretation of separation of Church and State prohibits us from keeping your bricks.
>
> We would be happy to reinscribe your bricks or return your money. Enclosed

is a new form and stamped envelope. Please let me know which you prefer. Again I am sorry to have to inform you of this matter.

Pltf.'s Ex. A. Mr. Russell asserts that although his bricks were removed, other bricks with religious messages were allowed to remain in the walkway, including the brick inscribed "God Bless You/Father Wirkes/St. Mary Church." Mr. Russell avers that after removing his bricks, the Mexico Academy school board adopted a policy prohibiting placement of bricks in the walkway which contain "religious messages."

### b. *Robert Kiesinger*

In their complaint, plaintiffs state that in 1998 plaintiff Robert Kiesinger bought a brick inscribed "Jesus Saves/John 3:16." The complaint states that when Mr. Kiesinger purchased the brick he indicated that he wished it to be placed near the front of the walkway, nonetheless, it was placed in an area not plainly visible at the edge of some shrubbery. Mr. Kiesinger allegedly complained and his brick was relocated.[2]

### c. *Crystal Huff*

Crystal Huff attests that in 1996, she was a member of the Mexico Academy Class of 1999, and the student government. Ms. Huff avers that in the "fall of 1996, the class government proposed a plan to sell bricks to the community to create a brick walkway in front of the school." As a member of the student government Ms. Huff worked with class officers "in an effort to devise and to implement a plan to sell the bricks." Ms. Huff avers that because the student government "wanted the community to be more than just financial supporters of the walkway," it proposed to allow "the community to express themselves on the brick by inscribing them with

---

**2.** The Court notes that the record contains no affidavit or other evidence from or regarding

Mr. Kiesinger or his brick. The Court further notes that the complaint is unverified.

messages." Ms. Huff asserts that after discussing the types of inscriptions that would be permissible, and more specifically, whether "religious, political, and controversial expression would be allowed on the bricks," the student government "decided to forbid only inscriptions that were obscene or vulgar." Ms. Huff contends that the student government's "overseers," identified as Mr. Borrowman and Ms. Duger, approved the plan, which was next submitted and approved by Superintendent Havens and the Mexico Academy school board. Ms. Huff asserts that after obtaining approval, the class of 1999 assembled and the "class leaders explained that the bricks could be sold to community members for $30 and could be inscribed with the messages of purchaser's choice except that no obscene or vulgar expression would be allowed."

### d. *Tiffany Henderson and Joshua Russell*

Tiffany Henderson and Joshua Russell, both members of the Class of 1999, have submitted identical affidavits. They aver that the class of 1999 class officers worked on a project to raise funds for their senior class trip by selling bricks to the community that would be used "to construct a brick walkway at the front entrance of the school." Ms. Henderson and Joshua Russell assert that class leaders explained at a class assembly that the bricks would be sold for $30 and inscribed with a message of the purchaser's choice except that "no obscene or vulgar expression would be allowed." Ms. Henderson and Joshua Russell further aver that during the assembly, at which Mr. Borrowman and Ms. Duger were present, "at least one student specifically asked if there were any limitations placed upon the inscriptions. The class officers explained that there were no limitations on expression, but the inscriptions could not be vulgar or obscene."

### 2. *Defendants*

In opposition, defendants have submitted affidavits from Scott Covell, who has been the Assistant Superintendent for Business for the Mexico Central School District since April 1997, and Michael Lee Havens, who was Superintendent of Schools for the Mexico Central School District between 1995 and June 2000, as well as several exhibits.

### a. *Scott Covell*

Mr. Covell avers that it has always been Mexico Academy's policy and practice to regulate expression on school property,[3] to wit: Mexico Academy has always banned

---

**3.** Mexico Academy's Community Use policy states in part:

School facilities may be used by community groups and non-school organizations when such uses do not interfere with school programs or activities. For purposes of this policy, facility is designed to include a school building, or school grounds, including athletic fields. School District-sponsored activities have priority over uses by community groups, and non-school organizations on any given date. It is understood by all applicants that School District-sponsored activities may make it necessary to cancel or postpone previously approved applications. Community groups and non-school organizations shall make application

for the use of a District facility directly to the Building Administrator.... Final approval will be made by the Board of Education unless said responsibility is delegated to the superintendent.

Permissible Use of School Facilities

School facilities may be used for the following purposes:

a) for instruction in any branch of education, learning, or the arts;

b) for public library purposes;

c) for a social, civic or recreational meeting or activity which is open to the general public;

d) for meetings and other uses pertaining to the welfare of the community, and open to the general public;

the use of school facilities for the purpose of religious services and/or instruction before, during or after school hours; regulated teachers' expression; and edited the content of student newspapers and publications; and never maintained its property as an open forum for "unrestricted expression." Further, Mr. Covell asserts that Mexico Academy's decision to ban all religious and political expression is consistent with its overall intent to maintain a limited public forum.

### b. *Michael Lee Havens*

Superintendent Havens agrees that Mexico Academy prohibited vulgar and obscene inscriptions, and asserts that "love interest" messages were also prohibited. Superintendent Havens takes issue with plaintiffs' claim that the bricks were intended for unlimited expression averring that he and the Mexico Academy School Board set policy, not the student government, and that the bricks were intended to be commemorative in nature, *e.g.*, they were to "commemorate students who had graduated from the school, businesses that had supported the school district, and or-

ganizations which had been vital to the school community's growth and development." As evidence of Mexico Academy's "commemorative intent" for the bricks, Mexico Academy submitted copies of brick order forms and advertisements. The first form introduced the brick sale as follows:

The Mexico High School Class of 1999 has undertaken the reconstruction of the front sidewalk at the High School. Plans are underway to re-pave the entire sidewalk from Route 104 to the front steps of the High School. The bricks are dark red to help bring back the nostalgia of when the school was first built. It is anticipated that the majority of the bricks will have inscriptions on them of: alumni, present students, community organizations, and area businesses. The project will be funded primarily by the sale of the bricks.

Each brick measures 4″ by 8″ and may contain up to three lines of text. The bricks will be installed for the beginning of the 1997 school year. You may purchase a brick with your name inscribed with up to 14 characters in it, and have

e) for meetings, entertainment and other occasions provided that:
1) The proceeds from any admissions are expended for an educational or charitable purpose, and
2) such meeting, entertainment or occasion is not under the exclusive control of a religious sect or denomination, or of a fraternal, secret or exclusive society or organization other than veterans of the United States military, Navy or Marines or volunteer firefighters, ambulance workers, and
f) for classes of instruction for educationally disabled minors operated by a private organization approved by the Commissioner of Education;
g) for recreation, physical training, and athletics;
h) for child care services during non-school hours, provided the cost of the care is not a School District charge and is to be paid by the person responsible for the support

of the child, local social services agency, or any other public or private voluntary source. The terms and conditions of such use shall be determined by the Superintendent of Schools.
i) for graduation exercises held by not-for-profit elementary and secondary schools, provided that no religious service is performed.

School facilities may not be used for a private or commercial activity. The intent is to provide community based program [sic] and be open to the public.

No outside organization or group may be allowed to conduct religious services or religious instruction on school premises before, during or after school hours. However, the use of school premises by outside organizations or groups after school for the purposes of discussing secular subjects from a religious viewpoint is permissible. Defs.' Ex. A.

it placed in the front of the High School for only $25.00.

Def.'s Ex. A. The second form states in relevant part:

The Mexico Academy Educational Foundation will be continuing the reconstruction of the front sidewalk at the high school. This project was started by the Class of 1999. The paving bricks, many of which are individually engraved, have made a striking improvement in an already beautiful building.

Engraved bricks can be purchased for $30 each by completing the information at the bottom and on the reverse side of this form. A personalized "commemorative certificate" will be sent for each brick purchased. The certificate is suitable for framing and makes the inscribed bricks excellent birthday, Christmas, or graduation gifts.

Become a permanent part of the Mexico district community by purchasing a brick. Hurry before they are all sold out!

Inscription Examples

| Example 1 | Example 2 | Example 3 |
|-----------|-----------|-----------|
| Jane Doe | Jane Doe | Jane Doe |
| Class of 1976 | I made it! | Riley |

Def.'s Ex. A.

Superintendent Havens states that Mexico Academy has always "employed a policy of editing and limiting verbal and written expression in the schoolhouse," and further, "[a]dult concerns, such as political party affiliation, religious beliefs, and other matters which are involved in this case were never a part of our contemplation." Superintendent Havens asserts it was never Mexico Academy's "intention to fully open this forum to allow full expression by any individual on any subject matter, regardless of its content. At all times we reserved the right to regulate expressions to include only appropriate ones for the school setting where students of all faiths attend." Superintendent Havens avers that of particular concern is the fact that not only high school students, but middle and elementary students traverse the walkway at issue.

Superintendent Havens asserts that Mexico Academy received several complaints about bricks referring to "Jesus,"[4] was threatened by the American Civil Liberties Union and a member of the Mexico community with a lawsuit and that he was contacted by a representative from the office of United States Senator Charles Schumer regarding the content of the bricks and Mexico Academy's criteria for determining which inscriptions were appropriate for display. Additionally, Superintendent Havens states that the complaints continued even after Mexico Academy placed the above described disclaimer in the walkway. Superintendent Havens avers that in February 2000, out of "obligation" and pursuant to their responsibility under New York Education Law § 414,[5] and the United States Constitu-

---

4. Superintendent Havens asserts that the complaint(s) Mexico Academy received from members of the community related to Paul Anderson's brick in particular. It appears from the parties' submissions that Mr. Anderson's brick was inscribed "Jesus Christ is Lord of this school." As previously noted, Mr. Anderson withdrew from this action, therefore the Court disregards all arguments and submissions insofar as they relate to Mr. Anderson.

5. Section 414 of the Education Law provides in relevant part:

Use of schoolhouse and grounds. Schoolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district. The trustees or board of education may adopt reasonable regulations for the use of such schoolhouses, grounds or other property, all portions thereof, when not in use for school purposes or when the school is in

tion, the Mexico Academy School Board voted to remove bricks referring to "Jesus."

According to Superintendent Havens, following removal of the bricks referring to "Jesus" Mexico Academy endeavored to close the previously "limited open forum" by prohibiting political and religious inscriptions. Superintendent Havens avers that the brick inscribed "God Bless You/ Fr. Wirkes/St. Mary's Church" was allowed to stay because it was consistent with Mexico Academy's policy of religious neutrality, did not identify any specific religion and was a "far cry from a Christian message." Superintendent Havens states that in keeping with the policy to prohibit religious and political inscriptions, Mexico Academy refused to inscribe a brick with "Keep Abortion Legal." In his affidavit, Superintendent Havens emphasizes Mexico Academy's "good faith" endeavors "to navigate a course between allowing some expression in the limited forum of a public school and not offending those who visited our school either as students or as members of the community."

## III. DISCUSSION

### A. Standard

To obtain a preliminary injunction, the movant must demonstrate: (1) it will suffer irreparable harm; and (2) either (a) a likelihood of success on the merits; or (b) a sufficiently serious question that raises a fair ground for litigation with the balance of hardships tipping decidedly in its favor,

to obtain a preliminary injunction. *See Time Warner Cable v. Bloomberg, L.P.,* 118 F.3d 917, 923 (2d Cir.1997).

Generally, preliminary injunctions are prohibitory in nature, and act to "maintain the status quo pending a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Entm't Inc.,* 60 F.3d 27, 34 (2d Cir.1995). Where, however, the moving party seeks "(i) an injunction [that] will alter, rather than maintain, the status quo, or (ii) an injunction [that] will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," the injunction is termed "mandatory." *Id.* at 33–34. To obtain a mandatory injunction, the moving party must demonstrate a clear or substantial likelihood of success on the merits, or that it will suffer extreme or very serious damage if denied preliminary relief. *See Id.* at 34; *see also Saratoga Bible Training Inst., Inc. v. Schuylerville Cent. Sch. Dist.,* 18 F.Supp.2d 178, 183 (N.D.N.Y.1998).

In this case, it is clear the parties assume plaintiffs' request for injunctive relief should be assessed in light of the prohibitive injunction standard. They assume incorrectly. While granting plaintiffs' motion and entering an order directing defendants to place plaintiffs' bricks back in the walkway would not, irrevocably, afford plaintiffs all the relief to which they would be entitled after a trial on the merits, since the bricks could again be removed, the Court finds that such an order would alter

---

use for school purposes if in the opinion of the trustees or board of education use will not be disruptive of normal school operations, for such other public purposes as are herein provided.... Such regulations shall provide for the safety and security of the pupils and shall not conflict with the provisions of this chapter and shall conform to the purposes and intent of this section and shall be subject to review on appeal to the commissioner of education as provided by

law. The trustees or board of education of each district may, subject to regulations adopted as above provided, permit the use of the schoolhouse and rooms therein, and the grounds and other property of the district, when not in use for school purposes or when the school is in use for school purposes if in the opinion of the trustees or board of education use will not be disruptive of normal school operations....

N.Y.EDUC.LAW § 414 (McKinney 2000).

the status quo, by requiring defendants to replace plaintiffs' bricks and disturb the walkway as it presently exists and as it existed prior to the filing of this lawsuit.[6] Accordingly, before plaintiffs will be entitled to mandatory injunctive relief, they must meet the higher burden of proof and demonstrate a clear or substantial likelihood of success on the merits. *See id.*

### B. Irreparable Harm

■ Plaintiffs aver that defendants have engaged in viewpoint discrimination in violation of the First Amendment by excluding their bricks from the walkway. It is well settled that " '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)); *accord New York Magazine v. Metropolitan Transp. Auth.*, 136 F.3d 123, 127 (2d Cir. 1998); *Deeper Life Christian Fellowship, Inc. v. Board of Educ.*, 852 F.2d 676, 679 (2d Cir.1988). Therefore, if plaintiffs sustain their allegation that Mexico Academy's exclusion of their bricks from the walkway violates their First Amendment rights, they will have established irreparable harm.

### C. Clear or Substantial Likelihood of Success on the Merits

As discussed above, in their complaint, plaintiffs bring five causes of action. It is manifest from a review of their moving papers, and in particular, their first cause of action, however, that plaintiffs are presently seeking injunctive relief under the Freedom of Speech Clause of the First Amendment. The Court will therefore address only the arguments plaintiffs have raised in the instant motion: first, that the inscriptions on their bricks contain constitutionally protected speech; second, that Mexico Academy designated the walkway for public expression, yet excluded their bricks on the basis that they contained inscriptions referencing Christianity thereby engaging in unconstitutional viewpoint discrimination; and third, that Mexico Academy's exclusionary actions were neither justified nor compelled by the Establishment Clause.

### 1. *Protected Speech*

■ "[P]ictures, films, paintings, drawings, and engravings ... have First Amendment protection...." *Kaplan v. California*, 413 U.S. 115, 119–20, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). Further, "private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995).

Plaintiff Russell avers in his affidavit that he purchased several bricks displaying religious inscriptions, thus, assuming— without deciding—that the speech is private, he has demonstrated a clear or substantial likelihood that the inscriptions he selected are protected by the Free Speech Clause of the First Amendment. Regarding plaintiff Kiesinger's brick, however, Kiesinger offered no evidence, apart from an assertion in the unverified complaint, showing the content of the inscription on his purchased brick. Therefore, there is no evidence that the inscription on Kiesinger's brick is protected by the First Amendment. Even assuming, however, that Kiesinger's inscription is protected speech, for the reasons below, plaintiffs' motion must still be denied.

---

**6.** Plaintiffs' bricks were removed in or about February 2000 and the complaint was filed in September 2000, more than seven months after the bricks had been removed.

## 2. *Forum*

The parties agree that the forum at issue, *e.g.*, the Mexico Academy walkway, is private property. Thus, Mexico Academy, "like the private owner of property, may legally preserve the property under its control for the use to which it is dedicated." *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 390, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993). This does not mean however, that Mexico Academy may exclude speech from the walkway for any reason. The extent to which defendants may limit access to the walkway depends upon the nature of the forum. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 121 S.Ct. 2093, 2099, 150 L.Ed.2d 151 (2001) ("[t]he standards that we apply to determine whether a State has unconstitutionally excluded a private speaker from use of a public forum depend on the nature of the forum."). There are three different types of state fora: the traditional public forum, the nonpublic forum, and the designated public forum and its sub-category, the limited public forum. *See Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Bronx Household of Faith v. Community Sch. Dist. No. 10*, 127 F.3d 207 (2d Cir.1997). Here, neither party suggests the Mexico Academy brick walkway is a traditional public forum or a nonpublic forum. The parties join issue over whether the Mexico Academy walkway is a designated or limited public forum. The Court will center its discussion accordingly.

▬ A designated public forum is defined as "property that would be a nonpublic forum except for the fact that government has intentionally opened it for use by the public for expressive activity." *Travis v. Owego–Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir.1991) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund., Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)); *see also New York Magazine v. Metropolitan Transp. Auth.*, 136 F.3d 123, 128 (2d Cir.1998). As in a nonpublic forum, in a designated public forum, the government "may enforce a content-based exclusion only when the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Travis*, 927 F.2d at 692 (internal quotations omitted). Content-neutral time, place, and manner restrictions are permissible in a designated public forum "only if the regulations are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communications." *Id.* (internal quotation and alteration omitted).

▬ The sub-category of the designated forum, the "limited public forum," is private property opened by the state as a " 'place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects.' " *Bronx Household of Faith*, 127 F.3d at 211 (2d Cir.1997) (quoting *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439). Unlike the designated public forum opened for "indiscriminate public use for communicative purposes," (*Lamb's Chapel*, 508 U.S. at 392, 113 S.Ct. 2141) in a limited public forum "the State is not required to and does not allow persons to engage in every type of speech." *Good News Club*, 121 S.Ct. at 2100. Only speech within the genre or subjects that the government has admitted to the limited public forum are afforded constitutional protection. *See Travis*, 927 F.2d at 692. Indeed, "[t]he State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.' " *Good News Club*, 121 S.Ct. at 2100 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995)).

Although the "government is free to impose a blanket exclusion on certain types of speech," in a limited public forum, "once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Travis*, 927 F.2d at 692. The State's restriction on speech in a limited public forum, "must not discriminate against speech on the basis of viewpoint, and the restriction must be 'reasonable in light of the purpose served by the forum'". *Good News Club*, 121 S.Ct. at 2100 (internal citation omitted) (quoting *Cornelius*, 473 U.S. at 806, 105 S.Ct. 3439).

Plaintiffs assert that defendants designated the Mexico Academy walkway as an area for public expression by allowing community members to purchase a brick that would be inscribed with the message of their choice and placed in the walkway. In support of their assertion plaintiffs have produced the following evidence: the disclaimer which Mexico Academy placed in the walkway that characterizes the brick inscriptions as "personal expressions" by individuals from the Mexico Academy community; the alleged fact that Mexico Academy originally accepted plaintiff Russell's proposed inscriptions as appropriate for the walkway as well as the inscription "God Bless You/Father Wirkes/St. Mary's Church;" and the unsupported averments and unidentified hearsay statements contained in the Huff, Henderson and Joshua Russell affidavits that indicate that the student government wanted to allow "the community to express themselves on the brick by inscribing them with messages" and that the class officers at one point told the Class of 1999 that "there were no limitations on expression, but the inscriptions could not be vulgar or obscene."

Defendants assert that, as evidenced by the flyers advertising the brick program, as well as their community use policy and Education Law § 414, the walkway was only open for the limited purpose of allowing inscriptions commemorating the school, but further assert that even if the walkway was initially open to expression, it was closed to political and religious expression by Mexico Academy's enactment of a "new policy" in February 2000.

■ Notwithstanding the above, the Court finds that it need not resolve the highly factual forum inquiry (*see Paulsen*, 925 F.2d at 69) ("... forum analysis involves fact-specific concerns...."); *Deeper Life*, 852 F.2d at 680 ("A determination of the State's intent in creating a forum is a fact-oriented inquiry...."), because even construing the facts in the light most favorable to defendants, and assuming the walkway is a limited public forum as they suggest, plaintiffs have produced some evidence which indicates that defendants discriminated against them on the basis of their viewpoint because plaintiff's precluded speech is of the same subject or genre as is presently in the walkway. *See Good News Club*, 121 S.Ct. at 2102 ("speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint"). Therefore, plaintiff's have arguably established a clear or substantial likelihood of success on the issue of viewpoint discrimination.

In *Good News Club*, the Supreme Court found that the defendant school district had unconstitutionally discriminated against the plaintiffs, who sought to hold an after school program teaching morals and values to elementary school children from a Christian perspective, when it denied them after-hours access to school property. *See Good News Club*, 121 S.Ct. at 2101. The Court held that because the school was a limited public forum and allowed other organizations which also taught morals and values, such as the Boy Scouts, to use school premises for their

programs, it discriminated against the plaintiffs on the basis of their Christian viewpoint by denying them access to the premises. *See id.*

In *Travis*, the Second Circuit found that because the plaintiffs' program, a fundraiser with a religious theme, "was the same type as a previously permitted use" of the school auditorium, a Christmas program, it did not need to "address the question of whether the School District has created only a limited public forum, rather than a designated public forum used for indiscriminate expressive activity by the public at large . . .," reasoning that:

> Even if the forum was limited, [the plaintiffs] being within the category for which use had been permitted, could not be denied access absent a sufficient constitutional justification. No such justification has been proffered. Though occasional prior use might not suffice to establish a designated public forum open to all, such use will result in a forum designated for the limited category exemplified by the prior permitted use.

*Travis*, 927 F.2d at 692–93 (internal citation omitted).

In this case, even if the walkway was limited to use for commemorative purposes and excludes religious speech, as defendants contend, because at least one brick evincing a religious message, "God Bless You/Fr. Wirkes/St. Mary's Church," was permitted, such use indicates that the forum may be characterized as having been designated for the limited category of deism, or inscriptions which refer to God.[7] Thus, plaintiffs have presented evidence which indicates that Mexico Academy excluded their bricks, which refer to "Jesus," on the basis that it is a reference to a specific deity, an otherwise permissible category. Accordingly, it appears that plaintiffs demonstrated a clear or substantial likelihood of success on the issue of viewpoint discrimination.

### 3. *Establishment Clause*

██ This, however, does not end the Court's inquiry in light of the defense that defendants have raised, specifically, that replacing plaintiffs' bricks would vio-

---

7. Mexico Academy asserts it enacted a "new policy" in February 2000, prohibiting all political and religious inscriptions from the walkway. Mexico Academy admits that thereafter, it excluded all bricks referring to "Jesus" from the walkway, but permitted the brick inscribed "God Bless You/ Father Wirkes/ St. Mary's Church" to remain. Mexico Academy seeks to distinguish the inscription "God Bless You/ Father Wirkes/ St. Mary's Church" from those referring to "Jesus" on the ground that the reference to "God" is secular in nature, a "universal term" and "commonplace," and therefore does not constitute an endorsement of any particular religion, while "Jesus" is an "explicit religious reference to a particular God suggesting the exclusion of others" offending Education Law § 414 and the United States Constitution. Def.'s Mem. of Law, p. 3. In support of their argument, defendants cite several cases in which Courts of Appeals have found that the "national motto" "In God We Trust" did not constitute a governmental endorsement of religion because the motto was a form of "ceremonial deism." *See Gaylor v. United States*, 74 F.3d 214, 216 (10th Cir. 1996) (holding that the primary effect of "In God we trust" is "not to advance religion; instead, it is a form of 'ceremonial deism' which through historical usage and ubiquity cannot be reasonably understood to convey government approval of religious belief"); *Aronow v. United States*, 432 F.2d 242, 243 (9th Cir.1970) (holding that " 'In God We Trust' has nothing whatsoever to do with the establishment of religion. Its use is of a patriotic or ceremonial character and bears no true resemblance to a governmental sponsorship of a religious exercise"). In this case, Mexico Academy's assertion that the "God Bless You" inscription is secular in nature because it is not identified with a particular religion is belied by the fact that the inscription identifies both the church and religious leader from which the message came.

late the Establishment Clause by imparting on Mexico Academy the appearance of endorsing one religion over another. Because plaintiffs have not submitted evidence sufficient to show a clear or substantial likelihood of success on this issue, their motion must be denied.

Plaintiffs argue defendants' discriminatory exclusion of their bricks from the walkway was neither justified nor compelled by the Establishment Clause. The Establishment Clause forbids government speech endorsing religion, but is often an inadequate shield against Freedom of Speech claims. *See Good News Club*, 121 S.Ct. 2093; *Lamb's Chapel*, 508 U.S. at 395, 113 S.Ct. 2141. Indeed, it is unclear under the current state of the law whether a governmental interest in avoiding an Establishment Clause violation justifies viewpoint discrimination in the first place. *See Good News Club*, 121 S.Ct. at 2103 (recognizing that "it is not clear whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination" but finding that "[w]e need not, however, confront the issue in this case, because we conclude that the school has no valid Establishment Clause interest"). Assuming, however, that it does, (*see e.g., Fleming v. Jefferson County School District No. R–1*, 170 F.Supp.2d 1094, 1115 (D.Colo.2001) (noting that the Supreme Court "expressly decided in *Good News Club* not to decide the issue ..." but assuming that "the government's interest in avoiding an Establishment Clause violation justifies viewpoint discrimination," the court analyzed the defendant school's Establishment Clause concerns)), plaintiffs must demonstrate a clear likelihood that the Establishment Clause does not justify Mexico Academy's exclusion of plaintiffs' bricks from the walkway.

Plaintiffs argue that permitting their bricks inscribed with religious speech in the Mexico Academy walkway would dem-

onstrate that defendants' brick program exhibits neutrality, rather than hostility, toward religion in compliance with the Establishment Clause. Plaintiffs further argue that the presence of their bricks in the Mexico Academy walkway would not, in any event, place upon defendants the impermissible appearance of endorsing religion because the inscriptions contain private speech and were displayed in a designated public forum.

### a. *Neutrality*

In *Good News Club*, the Supreme Court emphasized that a " 'significant factor in upholding governmental programs in the face of Establishment Clause attack is their *neutrality* towards religion.' " 121 S.Ct. at 2104 (quoting *Rosenberger*, 515 U.S. at 839, 115 S.Ct. 2510) (emphasis in *Good News Club*). The Court indicated that because the plaintiff religious club sought "nothing more than to be treated neutrally and given access to speak about the same topics as are other groups[,]" permitting the club "to speak on school grounds would ensure neutrality, not threaten it...." *Id.*

Here, plaintiffs' evidence shows that plaintiffs, who are concerned that defendants' actions in removing their bricks exhibit hostility toward religion rather than neutrality, seek reinstatement of their bricks in the walkway to display inscriptions referring to the same topic as contained in the inscription of at least one other brick presently in the walkway. Accordingly, like the defendant school in *Good News Club*, it would seem that Mexico Academy "faces an uphill battle in arguing that the Establishment Clause compels it to exclude" plaintiffs' bricks. *Id.*

### b. *Endorsement*

Turning to plaintiffs' assertion that the presence of their bricks would not place

upon Mexico Academy the impermissible appearance of endorsing religion, the Court notes that in support of their argument, plaintiffs rely principally on the plurality opinion in *Capitol Square*, in which Justice Scalia states there can be no "transferred endorsement" of religion by the government when the speech at issue is private: "[r]eligious expression cannot violate the Establishment Clause where it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms" *Capitol Square*, 515 U.S. at 768, 770, 115 S.Ct. 2440. Notwithstanding Mexico Academy's assertion that the speech is not purely private, but school sponsored, and the lack of proof on the issue of whether the Mexico Academy walkway is in fact a designated public forum, the section on which plaintiffs rely and from which the above-quoted statement was taken, was concurred with by only three other Justices.[8] *See id.* at 757, 115 S.Ct. 2440; *see also Elewski v. City of Syracuse*, 123 F.3d 51 at 54 (2d Cir.1997) (characterizing the concurring opinions of Justices O'Connor and Souter in *Capitol Square*, rather than Justice Scalia's opinion, as "outcome-determinative"). Moreover, the Court's discussion in *Good News Club*, of the defendant school's fear that students might think the school was endorsing religion in violation of the Establishment Clause were they to permit the plaintiff religious group to meet on school property, illustrates that the "endorsement test" is relevant even when the speech at issue is not school sponsored.

Here, plaintiffs have not produced evidence from which the Court can engage in the endorsement inquiry—a "highly fact-specific test"—which requires the Court to ascertain whether "a reasonable observer of the display in its particular context [would] perceive a message of governmental endorsement or sponsorship of religion" *Elewski*, 123 F.3d at 53; *see County of Allegheny v. Greater Pittsburgh ACLU*, 492 U.S. 573, 593–93, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989); *see also Capitol Square*, 515 U.S. 753, 115 S.Ct. 2440 (1995). "[T]he endorsement inquiry is not about the perceptions of particular individuals or saving isolated nonadherents from the discomfort of viewing symbols of a faith to which they do not subscribe" *Capitol Square*, 515 U.S. at 779, 115 S.Ct. 2440 (O'CONNOR, J., concurring in part and concurring in judgment). "It is for this reason that the reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious [speech takes place]" *Id.* at 780, 115 S.Ct. 2440.

In this case, as discussed above, the nature of the forum is in dispute, and there is no evidence, with the exception of the brick inscribed "God Bless You/Father Wirkes/St. Mary's Church" and the disclaimer,[9] showing context, to wit, the inscriptions amongst which plaintiffs' bricks would be placed. *See e.g., Elewski*, 123 F.3d at 55 (addressing whether the context, in which the city owned creche was placed, neutralized the message of governmental endorsement, the court found that the reasonable observer would not perceive endorsement, but "a celebration of the diversity of the holiday season, including traditional religious and secular symbols of that season. . . ."). Further, the evidence plaintiffs have produced suggests the circumstances of the instant case are

---

8. The section in *Capitol Square*, to which plaintiffs refer is joined only by Chief Justice Renquist, Justice Kennedy, and Justice Thomas.

9. There is no evidence, however, of the size or precise location of the disclaimer in comparison to the bricks in the walkway.

distinguishable from those in *Lamb's Chapel,* and more recently in *Good News Club,* where the Supreme Court held the defendant schools had no valid Establishment Clause interest, and consequently, no justification for violating the plaintiff religious groups' rights to Freedom of Speech.

In *Lamb's Chapel,* the Court found that because school "District property had been repeatedly used by a wide variety of private organizations," the plaintiff church group's showing of the film series on school property would not be during school hours, would not have been sponsored by the school, and would have been open to the public and not just church members, the defendant school's Establishment Clause fears were groundless as there was no "realistic danger that the community would think that the [school] District was endorsing religion ... and any benefit to religion or to the Church would have been no more than incidental" *Lamb's Chapel,* 508 U.S. at 395, 113 S.Ct. 2141.

Likewise, in *Good News Club,* the Court found that the defendant school's reliance on the Establishment Clause to exclude the plaintiff religious club from meeting on school property was "unavailing" because the school "made its [limited public] forum available to other organizations," the meetings were "after school hours, not sponsored by the school, and open to any student who obtained parental consent, not just to Club members....", school children were not allowed to loiter outside classrooms after school hours, the meetings were held in a high school room, the instructors were not school teachers and the club's presence would "ensure neutrali-

ty, not threaten it". *Good News Club,* 121 S.Ct. at 2103–2104. Moreover, in addressing "whether the community would feel coercive pressure to engage in the Club's activities," the Court determined that the "relevant community would be the parents, not the elementary school children[,]" because it was the parents who would "choose whether their children will attend the Good News Club meetings" *Id.* at 2104. In sum, the Court found that the circumstances, did not "support the theory that small children [10] would perceive endorsement...." *Id.* at 2106.

Here, the evidence indicates that plaintiffs' bricks, unlike the religious groups in *Lamb's Chapel* and *Good News Club,* if permitted on school property, would be present before, during and after school hours, and would allegedly be visible to all who cross the walkway. Further, unlike the students in *Good News Club,* who were required to obtain parental consent before attending a meeting, there is no evidence that Mexico Academy students, who are, in this case, part of the relevant audience, need parental consent to cross the walkway and potentially view plaintiffs' bricks. Indeed, the evidence suggests that the walkway is the "main thoroughfare" to the Mexico Academy high school entrance. Thus, the evidence presently before the court shows that the circumstances are sufficiently distinguishable from those in *Lamb's Chapel* and *Good News Club,* to foreclose the notion that there is a clear or substantial likelihood that plaintiffs will prevail on the Establishment Clause issue.

**10.** The Supreme Court's decision in *Good News Club* calls into in question the weight of Mexico Academy's fear regarding the impressionability of young students who might view plaintiffs' bricks. *See Good News Club,* 121 S.Ct. at 2106 ("We cannot operate, as Milford would have us do, under the assumption that any risk that small children would perceive endorsement should counsel in favor of excluding the Club's religious activity. We decline to employ Establishment Clause jurisprudence using a modified heckler's veto, in which a group's religious activity can be proscribed on the basis of what the youngest members of the audience might misperceive.").

Accordingly, while the Court is cognizant of *Good News Club*, and particularly its progeny, *Fleming*,[11] in light of Mexico Academy's Establishment Clause concerns, the unsettled state of the law, and most significantly, in the absence of competent admissible evidence, the Court finds plaintiffs have not demonstrated, at this stage of the litigation, a clear or substantial likelihood that they will prevail over defendants on the Establishment Clause issue.

## IV. CONCLUSION

For the foregoing reasons the Court finds plaintiffs have not produced evidence establishing a clear or substantial likelihood of success on the merits which would warrant the issuance of a mandatory preliminary injunction. Accordingly, it is hereby

**ORDERED** that plaintiffs' motion for a mandatory preliminary injunction is **DENIED** in its entirety.

**IT IS SO ORDERED.**

---

11. In *Fleming*, after denying the defendant's motion to dismiss, and the parties' cross-motions for summary judgment, a bench trial was held, and the Court issued a decision finding that the defendant school district violated the plaintiffs' First Amendment rights when it refused to display tiles, which the plaintiffs had painted and which contained religious messages, in a hallway inside Columbine High School. *Fleming*, 170 F.Supp.2d 1094. The plaintiffs along with students and other members of the community had been invited to paint tiles as part of the healing process and to honor slain children and friends following shootings at Columbine High School. *Id.* at 1098–1102. The court found that the "Defendants [were] not justified in relying on the Establishment Clause to authorize the viewpoint discrimination that occurred in this case" *Id.* at 1115.